OPINION OF THE COURT
Chief Judge Wachtler.
On this appeal, we must determine whether the prosecutor’s questioning of the primary defense witness about his religious beliefs and his decision to affirm, rather than swear, to the truth of his testimony constitutes reversible error. While we decline to hold that such questioning constitutes error per se, we hold that, except under extraordinary circumstances, it must be deemed sufficiently prejudicial to require a new trial, at least where the trial judge fails to give a prompt and clear corrective instruction.
The defendant was charged with the murder of an acquaintance. After meeting in a bar, they returned to her apartment and engaged in sexual intercourse, after which defendant, according to his own statement to a police officer, "snapped” and began to strangle her with her brassiere. He then took a glass jar filled with pennies and struck her in the head. After realizing the victim was dead, defendant returned to his own apartment and unsuccessfully tried to take his own life. He stated to the officer that there had been no argument or fight, and he did not know why he had killed his victim.
The circumstances of the alleged crime having been established by the defendant’s own admission, as well as physical evidence placing him at the scene of the crime, his trial strategy was to establish a reasonable doubt concerning his mental competence. Several witnesses testified to the defendant’s previous spontaneously violent behavior and to his responses to various psychological tests. His principal expert was a psychiatrist, Dr. Teich, who concluded that the defendant was suffering from a mental disease or defect at the time he killed the victim and lacked substantial capacity to know or appreciate the nature and consequences of his conduct or that such conduct was wrong. Dr. Teich affirmed, rather than swore, to the truth of his testimony. During the People’s cross-examination, the following occurred:
"Q. * * * Now I know that you affirmed your testimony in this case; is that true?
"mr. sammarco [defense counsel]: Objection. What does that have to do with anything?
*377 "the court: Overruled.
"mr. sammarco: Exception. It has to do with being expert in the field of psychiatry?
"the court: Overruled.
"mr. sammarco: Exception.
"Q. Did you affirm your testimony in this case?
"A. Yes, I did.
"Q. Would you not swear under oath, swear to God to tell the truth, nothing but the truth? Would you personally not do that?
"A. I affirmed.
"mr. sammarco: I’m going to ask the Court to instruct the jury on an affirmation because [the prosecutor] brought it up and it’s out of place.
"the court: Application denied.
"mr. sammarco: Exception.
"Q. Do you believe in God, period?
"A. I would like to complete my description of my affirmation because you asked me a question about swearing.
"As I understand the constitution of this country as a separation of church and state, and here I believe I’m in one of the organs of state, and any inclusion of reference to the church should be separated.
"So, I’ve chosen to separate it and take a course of action that is a lay course of action and that is to affirm and I do that out of choice.”
After denying a defense motion for a mistrial, the trial judge indicated he would "bring it up” in his charge if defense counsel so desired. During the course of his charge, he instructed the jury:
"Dr. Stephen S. Teich, prior to testifying, made an affirmation rather than giving you an oath. An affirmation is, 'a solemn declaration made by a person who conscientiously decline [sic] taking an oath; is equivalent to an oath and is just as binding; if a person has religious or conscientious scruples against taking an oath, the Notary Public should have the person affirmed. The following is a form of affirmation: You do solemnly, sincerely, and truly declare and affirm that the statements made by you are true and correct.’
"The fact that this witness gave an affirmation rather than an oath has no legal consequences as his testimony should be *378 given no less consideration nor [sic] no more consideration than those witnesses who have given an oath.”
The jury rendered a verdict of guilty of murder in the second degree, and the court imposed sentence. A divided Appellate Division affirmed, the majority holding in essence that while the court’s permitting the prosecutor to inquire into Dr. Teich’s religious beliefs was erroneous, such error was harmless in light of the court’s "satisfactory curative instructions” (107 AD2d, at p 831).
There was legally sufficient evidence of the defendant’s guilt, including his state of mind at the time of the crime. As noted, defendant’s commission of the act was established both directly and circumstantially by his own statement and by physical evidence placing him at the scene when the killing occurred. On rebuttal, the People offered competent expert testimony which, if believed by the jury, established that defendant was suffering from an "explosive personality,” but was able to appreciate the nature and consequences of his acts, and that the disorder did not rise to the magnitude of a mental disease or defect. However, that evidence followed Dr. Teich’s voluminous testimony to the contrary, presenting the jury with a close question on the issue of defendant’s mental state.
Dr. Teich, of course, had a constitutional and statutory right to affirm, rather than swear, to the truth of his testimony. Section 3 of article I of our Constitution provides, in pertinent part, that "no person shall be rendered incompetent to be a witness on account of his opinions on matters of religious belief’. CPLR 2309, applicable in criminal trials as well as civil (CPL 60.10), by its terms contemplates an equivalency between oaths and affirmations.
With limited exceptions not relevant here, any attempt to discredit or otherwise penalize a witness because of his religious beliefs or for the exercise of his right to affirm the truth of his testimony is improper, because those factors are irrelevant to the issue of credibility (Toomey v Farley, 2 NY2d 71, 82, rearg denied 2 NY2d 785; Brink v Stratton, 176 NY 150, 156 et seq. [opn by Cullen, J., joined by four members of the court]; People v De Pasquale, 54 Misc 2d 91, 92, affd 21 NY2d 715; Richardson, Evidence [Prince 10th ed] § 387; Fisch, New York Evidence § 464 [2d ed]).
The lower courts of our State, when confronted with such prosecutorial misconduct in criminal trials, have considered it *379 error, but have employed harmless error analysis in determining whether reversal is required (e.g., People v Valdivia, 108 AD2d 885, 886; People v Connette, 101 AD2d 699, 700 [dictum]; cf. People v Thomas, 91 AD2d 857, 858). There appears to be a split among other jurisdictions on the question (compare, People v Hall, 391 Mich 175, 182-183, 215 NW2d 166; and State v Thomas, 130 Ariz 432, 437, 636 P2d 1214 [per se rule adopted], with Commonwealth v Mimms, 477 Pa 553, 558-559, 385 A2d 334; State v Estabrook, 162 Ore 476, 91 P2d 838, 850; and State v Beal, 199 NC 278, 154 SE 604 [no per se rule]; see generally, Impeachment of Witness — Religious Belief, Ann., 76 ALR3d 539, §§ 7, 8).
Our own court has been reluctant to hold that any particular error requires reversal without examination into whether actual prejudice to the defendant resulted (e.g., People v Crimmins, 36 NY2d 230; CPL 470.05 [1]). Generally, the cases have limited findings of fundamental error to violations of a clear constitutional or statutory command (e.g., People v Jones, 47 NY2d 409, cert denied 444 US 946 [violation of right to public trial per se error]; and People v Britt, 43 NY2d 111 [refusal to charge that no adverse inferencé may be drawn from a defendant’s failure to testify per se error]). The out-of-State cases in this area follow a similar pattern. Thus, in State v Thomas (130 Ariz 432, 636 P2d 1214, supra), the count’s determination of fundamental error was based on a constitutional provision (Ariz Const, art II, § 12) which stated in part that no person may "be questioned touching his religious belief in any court of justice to affect the weight of his testimony.” Similarly, in People v Hall (391 Mich 175, 215 NW2d 166, supra), a statute (Mich Comp L Ann § 600.1436; Mich Stats Ann § 27A.1436) provided in pertinent part: "No witness may be questioned in relation to his opinions on religion, either before or after he is sworn.”
In our State, no constitutional or statutory provision prohibits impeachment by questions concerning the religious beliefs of a witness. That our courts have deemed such questioning improper as being irrelevant to credibility does not transform a violation of the rule into per se reversible error. Thus, we must determine whether the prosecutor’s questions on cross-examination, asked with the acquiescence of the trial court, require reversal in this case.
There are several factors to be considered in determining whether prosecutorial misconduct constitutes harmless error. *380 The over-all framework is the test of People v Crimmins (36 NY2d 230, 241-242, supra; see also, People v Roopchand, 107 AD2d 35, affd 65 NY2d 837), which focuses on the quantum and nature of the proof, and the likelihood that, if the error had not been committed, the outcome would have been different. In addition, our cases have focused on whether the prosecutor’s misconduct was provoked by defense counsel (e.g., People v Morgan, 66 NY2d 255, 259; People v Bailey, 58 NY2d 272, 277; People v Galloway, 54 NY2d 396, 400); to what extent the alleged misconduct has been preserved for our review (People v Bailey, 58 NY2d, at p 278, supra; People v Broady, 5 NY2d 500, 514, remittitur amended 6 NY2d 814, appeal dismissed and cert denied 361 US 8); and the extent to which the trial judge promptly acted to remove any prejudicial effect (People v Arce, 42 NY2d 179; People v Ashwal, 39 NY2d 105, 111).
Examining these factors in the context of the present case, we find that the evidence of defendant’s freedom from mental disease or defect and his capacity to understand the consequences of his actions was far from overwhelming. Rather, the jury was called upon to decide the winner of a closely fought battle of fully qualified experts, each of whom explained the bases for his opinion and testified at great length on a subject not easily understood by lay persons. The improper impeachment of defendant’s expert gave the People an unfair advantage which could very well have led the jury to accept their expert’s position.
In no way were the prosecutor’s remarks provoked, directly or indirectly, by defense counsel, who did not mention Dr. Teich’s religious beliefs on direct examination. Moreover, defense counsel did not attempt to "even the score” by employing similar tactics on the People’s witnesses.
The prosecutor’s misconduct was fully preserved for our review as a matter of law by defense counsel’s objection, request for a curative instruction and motion for a mistrial. This is not a case where only a small portion of the claimed misconduct is preserved for our review (compare, e.g., People v Broady, 5 NY2d, at pp 514-515, supra).
Finally, and most important, the trial judge did not act as a "saving grace,” handling the episode "promptly ánd forcefully” (People v Galloway, 54 NY2d, at p 399, supra). As noted in People v Ashwal (39 NY2d, at p 111, supra): "That is not to say that the trial was hopelessly flawed once the prosecutor *381 made the improper remarks. It is possible that the court might have dissipated the prejudice by promptly and clearly advising the jury that the comments were improper and must be completely disregarded [citations]. But when, as here, the court overrules the defendant’s objections, and gives 'standing to the statement of the District Attorney as legitimate’ * * * the possibility of prejudice is greatly enhanced.” Here, not only was defendant’s objection to the improper question overruled, but his request for a curative instruction was denied in the presence of the jury. Under such circumstances, the court’s later instruction on the equivalency of an affirmation and an oath, coming as it did in the middle of an extended charge, with no apparent emphasis or reference to its earlier rulings, cannot be deemed to have vitiated the prejudice caused by the court’s earlier apparent indorsement of the improper questioning.
We have considered defendant’s remaining contentions and find them to be without merit. The order of the Appellate Division should be reversed and a new trial ordered.
Judges Jasen, Meyer, Simons, Kaye and Alexander concur; Judge Titone taking no part.
Order reversed, etc.