**Walter Lee ANDERSON, Petitioner,**

v.

**John KEANE, Superintendent, Sing Sing Correctional Facility, Respondent.**

**No. 97 Civ. 3182(CM)(GAY).**

United States District Court, S.D. New York.

Sept. 17, 2003.

Jonathan C. Scott, Scott & Scott, LLP, Smithtown, NY, for Walter Lee Andersen.

Bridget Rahilly Steller, Office of the District Attorney, County of Dutchess, Poughkeepsie, NY, for John Keane.

## MEMORANDUM ORDER DENYING PETITIONER'S WRIT OF HABEAS CORPUS

MCMAHON, District Judge.

Petitioner Walter Lee Anderson was convicted of Murder in the Second Degree by a petit jury in Dutchess County Court on May 25, 1989. According to the testimony of multiple eyewitnesses, Petitioner repeatedly stabbed Carol Kantor in the chest and thigh with a kitchen knife outside of her car in a parking lot in Poughkeepsie, New York on the evening of October 2, 1988. Anderson's conviction was affirmed by the Appellate Division, Second Department two years after the jury verdict. *People v. Anderson,* 175 A.D.2d 806, 573 N.Y.S.2d 288 (2d Dept.1991).

In 1997, Anderson commenced this proceeding for a writ of habeas corpus, asserting that his conviction was constitutionally flawed for a variety of reasons, including ineffective assistance of trial counsel. On May 30, 2000, he amended his petition to include a claim of ineffective assistance of appellate counsel. Both the petition and the amended petition were referred to The Hon. George A. Yanthis, United States Magistrate Judge, for Report and Recommendation.

I have reviewed the Report and Recommendation of Judge Yanthis, United States Magistrate Judge, dated May 27, 2003 (in which Judge Yanthis dealt with the claims asserted in the original petition); the Supplemental Report and Recommendation of Judge Yanthis (which deals only with the claim of ineffective assistance of appellate counsel) dated June 3, 2003; Petitioner's Objections to both Reports, lodged by his attorney of record, Jonathon C. Scott,

Esq., on June 12, 2003; and a letter submitted by Petitioner himself, dated June 19, 2003, in which he outlines his own version of his ineffective assistance of appellate counsel argument.

In all respects, Judge Yanthis's thorough and well-reasoned May 27, 2003 Report and Recommendation (the "Original Report") is adopted by the Court as its own opinion as to the issues discussed therein. Indeed, neither Attorney Scott's Objections nor Petitioner's supplemental objections (if I may call them that) identifies any error in Judge Yanthis's original Report. Accordingly, I turn to the Supplemental Report and Recommendation, which deals only with the issue of ineffective assistance of appellate counsel, and the objections lodged thereto by Petitioner and his lawyer.

Familiarity with Judge Yanthis's Original Report—which contains an extended discussion about petitioner's heinous crime and the prior procedural history of the case—is assumed.

*Background Information about the Supplemental Report and Recommendation*

In May 2000, Petitioner amended his then-pending petition for a writ of habeas corpus to include a claim of ineffective assistance of appellate counsel. Because he had not yet exhausted that claim, this action was placed on the suspense calendar to permit exhaustion.

Petitioner filed a *pro se* Writ of Error Coram Nobis in December 2000. He alleged that appellate counsel had failed to raise a key issue on appeal—namely, the submission to the jury of a so-called "annotated" verdict sheet. The verdict sheet in question is attached to this opinion. It is "annotated" in the sense that it includes

the words "Intentional Killing" after the name of the crime charged in Court 1 of the Indictment, Murder in the Second Degree.

It is a quirk of New York criminal law that jurors are not allowed to take anything into the jury room that sets forth the elements of the charges against the defendant. So, for example, a New York State judge, unlike her federal counterpart, may not send a copy of the charge back to the jury room for use by the jurors during deliberations.[1] Similarly, the contents of any so-called "verdict sheet" are dictated by statute in CPL § 310.20(2):

2. A written list prepared by the court containing the offenses submitted to the jury by the court in its charge and the possible verdicts thereon. Whenever the court submits two or more counts charging a violation of the same section of a law defining an offense, the court my set forth the dates, names of complainants or specific statutory language, without defining the terms, by which the counts may be distinguished; provided, however, that the court shall instruct the jury in its charge that the sole purpose of the notations is to distinguish between the counts charging a violation of the same section of the law; . . . . . . .

The only time that language other than the name of the charged offense may lawfully be added to the verdict sheet is when two or more counts charge a violation of the same section of the Penal Law. When that happens—and only when that happens—specific statutory language may be added to the verdict sheet in order to minimize juror confusion.

The record reveals that the defendant was originally indicted on two separate

---

1. Almost a decade ago, New York's jury reform commission strongly recommended that this rule be abolished. Report of The Jury Project, March 1994, at 111–12. The Legislature has not yet seen fit to do so.

counts of Second Degree Murder in violation of Penal Law § 125.25—Intentional Killing and Depraved Indifference Murder—but the latter charge was not submitted to the jury, because the proof adduced at trial did not conform to the elements of that crime. The parenthetical "Intentional Killing" had been placed on an early draft of the verdict sheet—one that listed two separate counts of Second Degree Murder—to minimize juror confusion, because the jurors had heard about both Intentional Killing and Depraved Indifference Murder during the course of the trial. When the court declined to submit the charge of Depraved Indifference Murder to the jury, the reference to the second count was redacted but the descriptive phrase that had been added to the verdict sheet to allow the jurors to distinguish between the two murder counts was not removed. This violated § 310.20(2).

In his coram nobis petition, Petitioner contended that his appellate lawyer's failure to raise the issue of the annotated verdict sheet on appeal constituted ineffective assistance of counsel. He also castigated appellate counsel for failing to raise his claim of ineffective assistance of trial counsel for not objecting to the admission of the allegedly defective verdict sheet—this despite Petitioner's having submitted an affidavit from trial counsel which stated under oath that he *did* object to the admission of an annotated verdict sheet.

On April 9, 2001, the Appellate Division, Second Department denied the *coram nobis* petition, ruling that Petitioner had failed to establish that he was denied effective assistance of appellate counsel. The Appellate Division's decision contained no discussion of the point; it merely recited the conclusion that counsel's assistance had not been ineffective. *People v. Anderson*, 282 A.D.2d 542, 722 N.Y.S.2d 774, (2d Dept.2001).

*Standard of Review under AEDPA*

Petitioner filed his claim after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which mandates deference to state court decisions. *See* 28 U.S.C. § 2254(d). AEDPA deference only applies to a "state-court 'adjudication on the merits,' not to a disposition 'on a procedural, or other, ground.'" *Miranda v. Bennett*, 322 F.3d 171, 178 (2d Cir.2003) (quoting *Sellan v. Kuhlman*, 261 F.3d 303, 311 (2d Cir.2001)). To arrive at a decision "on the merits," the state court "need only dispose of petitioner's federal claim on substantive grounds, and reduce that disposition to judgment. No further articulation of its rationale or elucidation of its reasoning process is required." *Aparicio v. Artuz*, 269 F.3d 78, 94 (2d Cir.2001).

Here, as in *Aparicio*, the Appellate Division summarily denied Petitioner coram nobis relief. Also, as in *Aparicio*, there is "nothing to indicate that the claims were decided on anything but substantive grounds." *Id.* Indeed, the Appellate Division's terse opinion makes that quite clear—it ruled that Petitioner had "failed to establish" ineffective assistance of counsel. Thus, because Petitioner's claims have been "adjudicated on the merits" by the Appellate Division, habeas review must be conducted under AEDPA's deferential standards.

Once it has been determined that AEDPA deference must be accorded to the state court decision, the federal court must "focus its review on whether the state court's ultimate decision was an 'unreasonable application' of clearly established Supreme Court precedent." *Id.*, at 94 (quoting *Sellan*, 261 F.3d at 311–312). In this case, the issue is whether the Appellate Division's conclusion that petitioner had failed to prove ineffective assistance of

counsel constituted an unreasonable application of the Supreme Court's clearly established test for ineffective assistance of counsel, as articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

In order to show ineffective assistance of counsel, petitioner must demonstrate that he was denied reasonably effective assistance and that he suffered prejudice as a result of counsel's deficiencies; that is, "but for counsel's unprofessional error, the result of the proceeding would be different." *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. The *Strickland* test applies on appeal as well, so that a petitioner who alleges ineffective assistance of appellate counsel must demonstrate that appellate counsel acted objectively unreasonably in failing to raise a particular issue on appeal, and absent counsel's deficient performance, there was a reasonable probability that petitioner's appeal would have been successful before the state's highest court. *Smith v. Robbins*, 528 U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000); *Rivera v. Duncan*, 2001 WL 1580240, at *10 (S.D.N.Y.Dec.11, 2001). Appellate counsel is not required to raise every claim, "but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith, supra*, 528 U.S. at 288, 120 S.Ct. 746, citing *Jones v. Barnes*, 463 U.S. 745, 750–54, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). Thus a petitioner may show constitutionally ineffective assistance for appellate counsel only by showing that "appellate counsel 'omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker.'" *Rivera, supra*, 2001 WL 1580240, at *10 (quoting *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir.1994)).

For the Appellate Division's application of *Strickland* to petitioner's case to be "objectively unreasonable," "some increment of incorrectness beyond error is required." *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir.2000). However, "the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Id.* (citation and internal quotation marks omitted). The Second Circuit has twice found the requisite level of unreasonableness, and granted or affirmed the grant of habeas petitions due to ineffective assistance of counsel, where a New York state court refused to conclude that a defense lawyer's waiver of a so-called *Rosario* violation (*People v. Rosario*, 9 N.Y.2d 286, 213 N.Y.S.2d 448, 173 N.E.2d 881 (1961), *later codified in* C.P.L. § 240.45(1)(a)) did not rise to a constitutionally deficient level. *Flores v. Demskie*, 215 F.3d 293, 303–304, *cert. denied*, 531 U.S. 1029, 121 S.Ct. 606, 148 L.Ed.2d 517 (2000); *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir.1994), *cert. denied*, 513 U.S. 820, 115 S.Ct. 81, 130 L.Ed.2d 35 (1994). Our Court of Appeals reached these results—even though New York's refusal to subject *Rosario* violations to harmless error analysis is a rule of state criminal procedure that implicates no federal right—because violation of the *Rosario* rule automatically results in reversal. In *Mayo*, which, like this case, dealt specifically with a claim of ineffective assistance of appellate counsel, the Circuit noted that counsel had run afoul of *Strickland* by pressing weaker arguments while ignoring a sure winner.

Given the unavailability of harmless error analysis for a violation of CPL. § 310.20, it might appear that this case is no different than *Mayo*. However, due to the interplay between Strickland, AEDPA (which Congress passed two years after *Mayo* was decided) and two unique aspects of New York's Criminal Procedure Law, I conclude that *Mayo* does not control and no writ should issue.

*The Supplemental Report and Recommendation*

In his Supplemental Report and Recommendation, Judge Yanthis concluded that petitioner's claim of ineffective assistance of appellate counsel failed for several reasons, including, "there is no evidence in the record that trial counsel's performance was ineffective," (Supp. R & R at 3) and, "the court has already concluded that the verdict sheet, as submitted to the jury, did not violate petitioner's due process rights . . ." (Id.).

The learned Magistrate Judge is absolutely correct that a violation of CPL § 310.20(2) does not in and of itself violate the United States Constitution. Thus, trial counsel's failure to object to the verdict sheet does not, in and of itself, violate due process. Federal habeas corpus relief is, of course, only available for the violation of a Federal constitutional right, *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991), and no one has a Federal right to an unannotated verdict sheet. In fact, we give annotated verdict sheets to juries all the time in Federal criminal trials.

But petitioner is not asking this Court to review an error of state law. He argues that his appellate counsel's performance was constitutionally deficient. Submitting an annotated verdict sheet to a jury without the express consent of defense counsel results in automatic reversal of a conviction as a matter of *state* law, *People v. Spivey*, 81 N.Y.2d 356, 361, 599 N.Y.S.2d 477, 480, 615 N.E.2d 961 (1993); *People v. Kelly*, 76 N.Y.2d 1013, 1014, 565 N.Y.S.2d 754, 754, 566 N.E.2d 1159 (1990); *People v. Taylor*, 76 N.Y.2d 873, 874, 560 N.Y.S.2d 982, 983, 561 N.E.2d 882 (1990); *People v. Nimmons*, 72 N.Y.2d 830, 830–831, 530 N.Y.S.2d 543, 543, 526 N.E.2d 33 (1988). So petitioner contends that counsel's failure to object to the trial court's violation of CPL § 310.20(2) implicates federal constitutional guarantees under the Sixth Amendment right to effective assistance of counsel, at both the trial and appellate levels. Petitioner has adequately alleged the denial of a Federal constitutional right because he contends that his lawyer failed to raise on appeal an issue that would have inevitably resulted in the reversal of his conviction and the grant of a new trial. The fact that this particular error is a matter of state law—one that would never result in relief on appeal after a federal criminal trial—appears to make no difference. Otherwise, there would have been no basis for granting the writs in *Mayo* and *Flores*, where it was the peculiarity of New York's refusal to subject *Rosario* violations to harmless error analysis (a rule vastly different from the corresponding Federal rule for violations of the Jencks Act) that transformed the failure to appeal on a ground peculiar to the state's law into ineffective assistance of counsel.

In this case, Petitioner is barred from obtaining relief for trial counsel's performance, even if deficient, because, as Judge Yanthis correctly recognized, the issue was procedurally defaulted under state law and Petitioner has made no showing of actual innocence. (Original R & R at 27). The same cannot be said, however, of the issue of appellate counsel's performance. I must, therefore, turn then to the question of whether petitioner has established that the Appellate Division unreasonably applied *Strickland* when it denied his *coram nobis* petition. I conclude that it did not.

*Strickland Was Not Unreasonably Applied By the Second Department*

**First Prong: Objective Unreasonableness of the Failure to Raise the Issue on Appeal**

Decisions of the New York Court of Appeals make it clear that, absent

consent of defense counsel, it is *per se* reversible error to give a jury a verdict sheet that contains anything other than what is permitted by C.P.L. § 310.20(2) without the consent of defense counsel. Indeed, the New York Court of Appeals has ruled that *even if trial counsel fails to preserve the issue by objecting to a verdict sheet at trial,* the issue can properly be raised on appeal and the verdict must be overturned unless consent was given. *People v. Damiano,* 87 N.Y.2d 477, 640 N.Y.S.2d 451, 663 N.E.2d 607 (1996). The prosecution bears the burden of proving that consent was in fact given by defense counsel. *Bumper v. North Carolina,* 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). And the Court of Appeals has specifically held that "the lack of an objection to the annotated verdict sheet by defense counsel cannot be transmuted into consent, as the People ... argue." *Damiano, supra,* 87 N.Y.2d at 484, 640 N.Y.S.2d 451, 663 N.E.2d 607.

The verdict sheet that was submitted in this case described the crime of Murder in the Second Degree as "Intentional Killing." Since only one charge of Murder in the Second Degree was in fact submitted to the jury, it was error as a matter of New York law for the judge to give the jurors a verdict sheet containing those words (which include some but not all of the elements of a violation of Penal Law § 125.25(1)) without the express consent of defense counsel. Of course, it was undoubtedly true that the jurors had been informed that the original indictment contained two different counts charging two different theories of murder in the second degree. And if both counts had been submitted to the jury, submission of an annotated verdict sheet would have been per-

fectly acceptable—the language of the statute explicitly permits it. But one count was not submitted; and so under the literal language of CPL § 310.20, the verdict sheet could not include any descriptive language—even to make it clear which of the two theories the jurors had heard about was being submitted for their consideration—unless defense counsel consented. The verdict sheet contains such a notation, and the People concede, as does the trial judge's confidential law clerk, that this was an error—inadvertent, but an error nonetheless.

It is not disputed that the issue of verdict sheet annotations was not raised on direct appeal. There is nothing in the record to explain why it was not raised. In an effort to ascertain the reason, I have reviewed the record and the affidavits submitted by the trial judge's confidential law clerk, the prosecutor and defense counsel in connection with the original CPL § 440.10 motion. As is all too often the case, the critical exchange took place in chambers and off the record. The presiding judge, The Hon. John King, is now deceased. The prosecutor and Judge King's law clerk insist that both the original and the modified verdict sheets were presented to all counsel for review and no objections were made. Defense counsel states that he saw only the original verdict sheet and that he vigorously objected to the inclusion of any language that would offend CPL § 310.20(2). Defense counsel further states that he was not shown the second verdict sheet and insists that he would never have consented to the language that offends the statute if he had seen it. The trial record reflects none of this.[2]

---

**2.** In deciding the original C.P.L. § 440.10 motion, *People v. Anderson,* Ind. No. 118/99 (Dutchess Co. Ct., Oct. 29, 1999), Justice

(then Judge) Marlow did not resolve any of the disputed factual issues about what did or did not occur in Judge King's chambers, nor

The record on the C.P.L. § 440.10 motion does contain an uncontradicted representation by the judge's law secretary that counsel were given the opportunity to place objections on the record after the conference. The trial transcript indicates that, once back on the record, defense counsel did not object on the record, even to the use of the language on the original verdict sheet. The trial transcript also reveals that the judge clearly stated on the record that he was submitting the verdict sheet to the jury. Defense counsel neither asked to review it one last time nor offered any objection to its being handed to the jurors. Unfortunately, there is no evidence of express consent, either. At least since *Damiano*, it has been clear that defense counsel's lack of objection cannot be equated with consent.

■ But *Damiano* was not decided until some years after Petitioner's conviction was affirmed. Under *Strickland*, an attorney's performance must be "viewed as of the time of counsel's conduct," *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052, and counsel is not required to forecast changes in the governing law. *Mayo v. Henderson*, 13 F.3d at 533. The People suggest that *Damiano* worked a change in the law, which, if true, would affect whether it was objectively unreasonable for appellate counsel to call the error to the Appellate Division's attention.

*Damiano* added absolutely nothing to New York jurisprudence on the question of whether submission of an annotated verdict sheet to a petit jury constituted *per se*

reversible error. A long string of New York cases, many of them decided prior to Petitioner's 1989 trial and 1991 appeal, affirmed the principle of strict statutory construction as applied to CPL § 310.20, *see People v. Spivey*, 81 N.Y.2d 356, 599 N.Y.S.2d 477, 615 N.E.2d 961 (1993); *People v. Johnson*, 81 N.Y.2d 980, 599 N.Y.S.2d 525, 615 N.E.2d 1009 (1993); *People v. Kelly*, 76 N.Y.2d 1013, 565 N.Y.S.2d 754, 566 N.E.2d 1159 (1990); *People v. Nimmons*, 72 N.Y.2d 830, 530 N.Y.S.2d 543, 526 N.E.2d 33 (1988); *People v. Owens*, 69 N.Y.2d 585, 590, 516 N.Y.S.2d 619, 509 N.E.2d 314 (1987); *People v. Moore*, 71 N.Y.2d 684, 688, 529 N.Y.S.2d 739, 525 N.E.2d 460 (1988). Cases decided by the New York Court of Appeals prior to petitioner's direct appeal also rejected any notion of harmless error analysis in the face of such an error. *Owens*, 69 N.Y.2d at 592, 516 N.Y.S.2d 619, 509 N.E.2d 314; *People v. Wood*, 66 N.Y.2d 374, 379, 497 N.Y.S.2d 340, 488 N.E.2d 86 (1985); *People v. Sanders*, 70 N.Y.2d 837, 838, 523 N.Y.S.2d 444, 445, 517 N.E.2d 1330 (1987). Thus, both the substantive rule of law and a defendant's absolute entitlement to a new trial if an annotated verdict sheet was erroneously used were well settled at the time of petitioner's appeal.

*Damiano* does appear to be the first case in which New York's highest court stated unequivocally that defense counsel's failure to object on the record to an annotated verdict sheet constitutes implicit consent. *Damiano*, 87 N.Y.2d at 481, 484, 640

---

did he mention the "patent statutory violation" (submission of an annotated verdict sheet) that had long been "uniformly repudiated by our precedents." *Damiano*, 87 N.Y.2d at 484, 640 N.Y.S.2d at 455, 663 N.E.2d 607. Petitioner's claim of ineffective assistance of *trial* counsel was denied as procedurally barred, solely because the issue could have been raised on direct appeal (the

defective verdict sheet being part of the record on appeal) and was not. Similarly, in ruling on the *coram nobis* petition, the Appellate Division made no findings concerning what had happened at the trial court level and never mentioned the relevant law concerning the contents of verdict sheet—an omission that complicates, but does not preclude, habeas review.

N.Y.S.2d at 453, 455, 663 N.E.2d 607. It did so, however, by relying on the literal meaning of the unambiguous language of the statute. It is a hallmark of the Court of Appeals' jurisprudence to construe express, unambiguous statutory language strictly, so in theory its rejection of the People's argument that lack of an objection equalled consent should have come as no surprise. The People nonetheless suggest that it was not objectively unreasonable for appellate counsel to ignore the annotated verdict sheet issue on appeal because, prior to *Damiano*, counsel could reasonably have concluded that failure to object did not preserve the issue for appeal.

But by virtue of another quirk of New York law, trial counsel's failure to object did not necessarily bar appellate consideration of the issue. Intermediate appellate courts in New York (thought not the New York Court of Appeals) are authorized by statute to review unpreserved errors as an exercise of discretion when it is in the interest of justice to do so. C.P.L. § 470.15. In *People v. Cona*, 49 N.Y.2d 26, 424 N.Y.S.2d 146, 399 N.E.2d 1167 (1979), the New York Court of Appeals recognized that the Appellate Division "may exercise its discretionary power to review alleged errors even in the absence of that timely objection which is necessary to create a question of law . . . . ." *Cona*, 49 N.Y.2d at 33, 424 N.Y.S.2d at 149, 399 N.E.2d 1167. The *Cona* court recognized that the Appellate Division had discretionary power to review an erroneous jury charge despite the fact that trial counsel had failed to lodge any objection thereto. And in a case decided prior to both *Damiano* and petitioner's direct appeal, the Appellate Division, Second Department—the very court that reviewed Petitioner's conviction—ex-

ercised its discretionary authority under C.P.L. § 470.15 and *Cona* to reverse a conviction "in the interest of justice" on the ground that an annotated verdict sheet had been submitted to the jury without objection. *People v. McKenzie*, 148 A.D.2d 472, 539 N.Y.S.2d 20 (2d Dep't 1989).[3]

So *Damiano* did not, as the People suggest, create the defendant's right to raise the unpreserved C.P.L. § 310.20 objection on appeal. The only thing *Damiano* added to the analysis was a clear statement that defense counsel's failure to object did not constitute "consent" as a matter of law.

Thus, even though *Damiano* was still six years in the future when Anderson took his appeal, his lawyer should have known to suggest that the Appellate Division review the unpreserved verdict sheet issue as a matter of discretion under C.P.L. § 470.15(3)(c). Because harmless error analysis is not available to overcome a violation of C.P.L. § 310.20, appellate counsel's failure to raise the matter on appeal was "objectively unreasonable."

**Second Prong: Reasonable Probability of Different Result**

I turn then to the second prong of the *Strickland* analysis: whether there is a reasonable probability that petitioner's appeal would have been successful if the unpreserved objection had been raised. This requires a Federal court sitting on a habeas petition to divine whether the Appellate Division would have chosen to exercise its discretion to review the unpreserved error. For review of an error "as an exercise of discretion" is not automatic. The statute provides for reversal "as a matter of discretion *in the interest of justice,*" not for discretionary review in all instances. CPL § 470.15(3)(c). The Ap-

---

**3.** Trial counsel in *McKenzie* belatedly objected to the annotated verdict sheet, but only after

it had been given to the jurors without objection.

pellate Division retains substantial authority to decide whether review is warranted, based on the entirety of the circumstances. For example, in *McKenzie*, the Appellate Division threw out the verdict obtained following submission of an annotated verdict sheet, but did so only after noting that the evidence against the appellant was "not overwhelming." *McKenzie*, 148 A.D.2d at 472, 539 N.Y.S.2d at 21. For that reason the Second Department concluded that the interest of justice warranted review of the belatedly preserved error. Similarly, in *People v. Ranum*, 122 A.D.2d 959, 506 N.Y.S.2d 105 (2d Dep't.1986), the Appellate Division reversed the conviction of a teacher accused of sexually abusing a learning disabled student in the interest of justice "in light of the weakness of the prosecution's case." *Ranum*, 122 A.D.2d at 961, 506 N.Y.S.2d at 107; *see also People v. Payne*, 241 A.D.2d 466, 467, 660 N.Y.S.2d 147, 147 (2d Dep't 1997); *People v. Hemingway*, 240 A.D.2d 328, 328, 662 N.Y.S.2d 755, 756 (1st Dep't 1997); *People v. Hurd*, 220 A.D.2d 454, 631 N.Y.S.2d 871, 872 (2d Dep't 1995); *People v. Jones*, 216 A.D.2d 324, 325, 627 N.Y.S.2d 778, 779 (2d Dep't 1995); *People v. Boyton*, 189 A.D.2d 721, 722, 593 N.Y.S.2d 183, 184 (1st Dep't 1993).

Here is where AEDPA's mandated deference to the Appellate Division's holding on Anderson's *coram nobis* petition comes into play. By concluding that petitioner had not proven ineffective assistance of appellate counsel—despite the fact that reversal would have been inevitable had the unpreserved error been reviewed—the Second Department could only have been saying that petitioner failed to prove that his was the sort of case in which the

Appellate Division would have chosen, *in the interest of justice*, to exercise the discretion conferred by C.P.L. § 470.15(3)(c). AEDPA requires me to defer to that conclusion; and in any event the Appellate Division is manifestly more familiar with its inclination to engage in discretionary review of unpreserved errors in the interest of justice than any federal judge could possibly be. Given the heinous nature of Anderson's crime and the overwhelming evidence marshaled against him (as set forth at length in Magistrate Judge Yanthis' Original Report), I can hardly quarrel with the state court's conclusion.

The Second Circuit's decisions in *Mayo* and *Flores*, cited above, do not counsel a contrary result. As previously noted, AEDPA had not yet been passed when *Mayo* was decided, so ADEPA deference to a state court's determination on the merits was not implicated. And while *Flores* involves a post-AEDPA habeas petition, it addressed a claim of ineffective assistance of *trial* counsel, and thus does not deal with the Appellate Division's discretionary power to review unpreserved errors, which turns out to be the determinative issue in this case.

For the foregoing reasons, petitioner is unable to demonstrate that absent counsel's deficient performance there was a reasonable probability that his appeal would have been successful before the state's highest court, as required by the second prong of *Strickland*.[4] For that reason, rather than for the reasons set forth in the Magistrate Judge's Supplemental Report, the petition for a writ of habeas corpus on the ground of ineffective assistance of appellate counsel is denied.

---

**4.** Because a determination on a Writ of Error *Coram Nobis* is not appealable to the Court of Appeals, the Appellate Division is the State's highest court in this instance. *Hizbullahank-*

*hamon v. Walker*, 255 F.3d 65 (2d Cir.2001); *Levine v. Commissioner of Correctional Services*, 44 F.3d 121 (2d Cir.1995).

As petitioner has made no substantial showing of the denial of a constitutional right, there is no question of substance for appellate review. Therefore, no certificate of appealability shall issue. 28 U.S.C. § 2253; *see United States v. Perez*, 129 F.3d 255, 259–60 (2d Cir.1997); *Lozada v. United States*, 107 F.3d 1011 (2d Cir.1997); *Rodriquez v. Scully*, 905 F.2d 24 (2d Cir. 1990). I certify, pursuant to 28 U.S.C. § 1915(a), that an appeal from this order would not be taken in good faith. *Coppedge v. United States*, 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

The Clerk of the Court shall enter an order dismissing the case and close the file.

This constitutes the decision and order of the Court.

## EXHIBIT B

### VERDICT SHEET

STATE OF NEW YORK
COUNTY COURT  : COUNTY OF DUTCHESS
-------------------------------------x

THE PEOPLE OF THE STATE OF NEW YORK

    - against -

WALTER LEE ANDERSON,

            Defendant.

-------------------------------------x

DATE:   JUNE 8 , 1989

JUDGE:   JOHN R. KING

INDICTMENT #118/88

| COUNT # | CRIME | GUILTY | NOT GUILTY |
|---------|-------|--------|------------|
| 1 | MURDER IN THE SECOND DEGREE (INTENTIONAL KILLING) | X | |

IF YOU FIND THE DEFENDANT GUILTY OF MURDER IN THE SECOND DEGREE, INTENTIONAL KILLING, PUT AN "X" IN THE GUILTY BOX AND THEN RETURN TO THE COURT WITH YOUR VERDICT.  DO NOT DELIBERATE WITH REGARD TO MANSLAUGHTER IN THE FIRST DEGREE.

IF YOU FIND THE DEFENDANT NOT GUILTY OF MURDER IN THE SECOND DEGREE, INTENTIONAL KILLING, PUT AN "X" IN THE NOT GUILTY BOX AND THEN GO TO PAGE TWO, MANSLAUGHTER IN THE FIRST DEGREE.

**EXHIBIT C**

| COUNT # | CRIME | GUILTY | NOT GUILTY |
|---------|-------|--------|------------|
| 2 | MANSLAUGHTER IN THE FIRST DEGREE | | |

IF YOU FIND THE DEFENDANT GUILTY OF MANSLAUGHTER IN THE FIRST DEGREE PUT AN "X" IN THE GUILTY BOX AND THEN RETURN TO THE COURT WITH YOUR VERDICT.

IF YOU FIND THE DEFENDANT <u>NOT</u> GUILTY OF MANSLAUGHTER IN THE FIRST DEGREE, PUT AN "X" IN THE NOT GUILTY BOX AND THEN RETURN TO THE COURT WITH YOUR VERDICT.