[860 NYS2d 266]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL HOFFLER, Also Known as MURDER, Appellant.

Third Department, June 12, 2008

**APPEARANCES OF COUNSEL**

*Raymond A. Kelly Jr.*, Albany, for appellant.

*Richard J. McNally Jr., District Attorney*, Troy (*Anne L. Coonrad* of counsel), for respondent.

**OPINION OF THE COURT**

PETERS, J.

Following a jury trial, defendant was convicted of murder in the first degree. His conviction stems from the December 30, 2003 fatal shooting of the victim, a confidential informant who defendant arranged to be killed in order to prevent his testimony in defendant's January 2004 drug trial. Defendant appeals.

While defendant asserts a host of pretrial errors, we find no fault with County Court's rulings prior to the commencement of the trial. Defendant first contends that County Court erred by refusing to dismiss the indictment due to the insufficiency of evidence presented to the grand jury and the defective nature of the grand jury proceeding. With regard to his legal sufficiency claim, defendant argues that the grand jury's consideration of statements made by an accomplice, Lance Booker, violated his right of confrontation secured under the Sixth Amendment (*see generally Crawford v Washington*, 541 US 36 [2004]; *Cruz v New York*, 481 US 186 [1987]; *Bruton v United States*, 391 US 123 [1968]) and that, in the absence of such evidence, there was not legally sufficient evidence before the grand jury. However, as defendant had no right of cross-examination, he was not deprived of any right by the grand jury's consideration of the statements (*see People v Scalise*, 70 AD2d 346, 350 [1979]; *see also People v Rocco*, 229 AD2d 599, 600 [1996], *lv denied* 89 NY2d 929 [1996]). Nor has defendant met the " 'very precise and very high' " test for establishing that the grand jury proceeding was defective within the meaning of CPL 210.35 (5) so as to warrant the "exceptional remedy" of dismissal of the indictment (*People v Huston*, 88 NY2d

400, 409 [1996], quoting *People v Darby*, 75 NY2d 449, 455 [1990]; *see People v Serkiz*, 17 AD3d 28, 30 [2005]).

■ County Court also properly refused to suppress the call records for two cellular telephones which were illegally seized from defendant's home. While evidence that has been illegally obtained may not generally be used against a defendant in his or her trial (*see People v Arnau*, 58 NY2d 27, 32 [1982], *cert denied* 468 US 1217 [1984]), under the inevitable discovery rule, secondary evidence obtained as a result of information derived from an illegal search is admissible if normal police conduct would have inevitably led to the evidence (*see People v Turriago*, 90 NY2d 77, 85 [1997]; *People v Fitzpatrick*, 32 NY2d 499, 506 [1973], *certs denied* 414 US 1033, 1050 [1973]). Here, the People showed "by a 'very high degree of probability that the evidence in question would have been obtained independently of the tainted source' " (*People v Binns*, 299 AD2d 651, 653 [2002], *lv denied* 99 NY2d 612 [2003], quoting *People v Payton*, 45 NY2d 300, 313 [1978], *revd on other grounds* 445 US 573 [1980]; *see People v Turriago*, 90 NY2d at 86).[1]

We next address County Court's denial of defendant's motion to suppress computer evidence seized from his home. The police were issued a search warrant based on the affidavit of a detective and extensive attached documentation, including two written statements by Booker. When executing the warrant, the police knocked on the front door of the residence for 5 to 10 minutes and, upon receiving no response, went to the back and pushed open the door. In the course of executing the warrant, several pieces of computer equipment, including a hard drive, were seized. Thereafter, police acquired an amended search warrant in order to search the contents of the computer equipment seized.

■ ■ ■ First, we find no merit in defendant's contention that the police failed to give adequate notice prior to entering his home to execute the search warrant. Inasmuch as the police made a reasonable effort to notify occupants of their authority and purpose prior to entering (*see* CPL 690.50 [1]) and, moreover, had reason to believe that the home was unoccupied (*see* CPL 690.50 [2] [a]), they were permitted to enter. Nor are we

---

1. We note that, contrary to defendant's contention, the doctrine of inevitable discovery was properly before the suppression court inasmuch as it was argued by the People both at the suppression hearing and in their posthearing submission (*see People v Turriago*, 90 NY2d at 80, 84; *compare People v Paul*, 139 AD2d 916, 918 [1988]).

persuaded by defendant's argument that the warrant lacked probable cause to believe that there was a computer at his home which contained evidence relating to the murder. As one of Booker's statements submitted in support of the search warrant represented that defendant had gleaned, from an Internet site, a house for sale in the City of Troy, Rensselaer County that he could lure the victim to in order to kill him, we find sufficient information to support a reasonable belief that the computer was located at defendant's home (*see People v Robinson*, 68 NY2d 541, 551-552 [1986]; *see also People v Tambe*, 71 NY2d 492, 503-504 [1988]). Lastly, we find unavailing defendant's claim that the amended search warrant was overbroad, as the search was limited to the four computer items seized pursuant to the original warrant and, more particularly, to only such information within those four items that evinced the crime of murder (*see Andresen v Maryland*, 427 US 463, 480-482 [1976]; *People v Graham*, 69 AD2d 544, 549 [1979], *vacated on other grounds* 446 US 932 [1980]). Defendant's additional claims of pretrial error have been reviewed and found to be without merit.

■ Turning to defendant's assertions of trial error, we find merit in his contention that the complete failure to swear any of the prospective jurors in accordance with CPL 270.15 (1) (a) requires reversal of his conviction as a matter of law. CPL 270.15 requires the administration of two distinct and separate oaths prior to the inception of a jury trial. The first, contained in CPL 270.15 (1) (a), mandates that, prior to any questioning, the names of not less than 12 members of the panel shall be drawn and such persons "shall take their places in the jury box and shall be immediately sworn to answer truthfully questions asked them relative to their qualifications to serve as jurors in the action." After examination of the prospective jurors' qualifications and the exercise of peremptory challenges and challenges for cause (*see* CPL 270.15 [2]), the remaining jurors must be given the second prescribed oath, in which they are "sworn to try the action in a just and impartial manner, to the best of their judgment, and to render a verdict according to the law and the evidence" (CPL 270.15 [2]).

Here, in contravention of CPL 270.15 (1) (a), the prospective jurors were examined as to their qualifications to serve as jurors without ever having been sworn to truthfully answer the questions posed to them. At the inception of jury selection, County Court began questioning the prospective jury pool as to whether they had formed any opinion that would preclude any of them

from being fair and impartial. After the court questioned and dismissed a number of jurors on this basis, defense counsel interposed an objection on the ground that the jury pool was being questioned without having been placed under oath. In response, County Court requested the presence of the Commissioner of Jurors, who acknowledged that the prospective jury pool had been given an oath prior to entering the courtroom. When asked by defense counsel which oath had been administered to the jury pool, the Commissioner read the oath that had been given. As the record clearly reveals, the oath given by the Commissioner was actually the second oath mandated by CPL 270.15 (2) (to fairly try the issues before them and render a verdict in accordance with the evidence). Defendant again interposed an objection, which the court denied. At no point were any of the prospective jurors administered the oath of truthfulness required by CPL 270.15 (1) (a). Following the verdict, the court denied defendant's motion to set aside the verdict on this ground.

Defendant timely objected to the error, thus drawing County Court's attention to the impropriety, and presented an adequate record in support of this error (see *People v Patterson*, 203 AD2d 597, 597-598 [1994]; compare *People v Melendez*, 205 AD2d 392, 393 [1994], *lv denied* 84 NY2d 829 [1994]). While a paucity of case law has addressed the failure to give an oath, we find *People v Patterson* (*supra*) particularly instructive. There, County Court refused, over defendant's objection, to swear the panel of prospective jurors prior to voir dire and continued to question the jurors regarding their qualifications to serve without having administered the oath of truthfulness (*People v Patterson*, 203 AD2d at 597-598). Although it appears that the jurors in *Patterson* may have eventually been given this oath, it was only after the trial court had asked questions regarding, among other things, "the jurors' very ability to impartially serve on the jury" (*id.* at 598). This procedure was found to be violative of CPL 270.15 (1) (a), whose "directive could not be more clear" (*id.* at 598). While the Second Department chose not to "pass on the issue of whether in the absence of any apparent prejudice, standing alone, this error would warrant reversal" (*id.*), we now find it necessary to resolve this question. We hold that the complete failure to administer the oath of truthfulness, absent any demonstration of prejudice, constitutes a fundamental defect in the proceedings that irreparably infected the trial.

The Court of Appeals has limited findings of "fundamental error"—those which require reversal without an inquiry as to

whether actual prejudice to the defendant resulted—"to violations of a clear constitutional or statutory command" (*People v Wood*, 66 NY2d 374, 379 [1985]; *see People v Crimmins*, 36 NY2d 230, 237-238 [1975]). Examples of such errors include the erroneous dismissal of a juror (*see People v Anderson*, 70 NY2d 729 [1987]), an improper jury charge on reasonable doubt (*see People v Sanders*, 69 NY2d 860 [1987]), distribution of only certain portions of a charge to the jury in writing for use in its deliberations (*see People v Owens*, 69 NY2d 585 [1987]), the absence of the trial judge from the courtroom, and delegation of some of his or her other duties to his or her law secretary, during a portion of the jury's deliberations (*see People v Ahmed*, 66 NY2d 307 [1985]), and the violation of the right to a public trial (*see People v Jones*, 47 NY2d 409 [1979], *cert denied* 444 US 946 [1979]). Like the aforementioned errors, we believe that the administration of the oath of truthfulness to prospective jurors is a clear statutory directive and a fundamental part of a criminal jury trial, without which a defendant is denied full assurance of a fair and impartial jury.

"Fundamental to our constitutional heritage is an accused's right to trial by an impartial jury" (*People v Johnson*, 94 NY2d 600, 610 [2000] [citation omitted]; *see* NY Const, art I, § 2; US Const 6th, 14th Amends; *see also People v Branch*, 46 NY2d 645, 652 [1979]; *People v Hartson*, 160 AD2d 1046, 1047 [1990]). While "the Constitution makes no mention of voir dire, the law recognizes the important role this process plays in ensuring the fair and impartial criminal jury mandated by the Sixth Amendment" (*United States v Quinones*, 511 F3d 289, 299 [2d Cir 2007]; *see Morgan v Illinois*, 504 US 719, 729-730 [1992]; *St. Lawrence v Scully*, 523 F Supp 1290, 1297 [SD NY 1981], *affd* 697 F2d 296 [2d Cir 1982]), and the "necessity of truthful answers by prospective jurors if this process is to serve its purpose is obvious" (*McDonough Power Equipment, Inc. v Greenwood*, 464 US 548, 554 [1984]; *see Smith v Phillips*, 455 US 209, 217 [1982]).

The statutory requirement to administer an oath to ensure that prospective jurors truthfully answer the questions posed to them serves as a significant safeguard of a criminal defendant's fundamental constitutional right to a trial by an impartial jury. Just as the failure to administer the statutorily required oath or affirmation to a witness in a criminal trial, absent a valid waiver, requires the resulting conviction be set aside without regard to any prejudice suffered by a defendant (*see* CPL 60.20 [2]; *People*

*v Copeland*, 70 AD2d 884, 885 [1979]), we find no reason to apply a different rule in the context of a juror oath. "Oaths are not formalities, are sacred, and no citizen need expose himself [or herself] to loss of liberty and property by people who are *not sworn*" (*State v Saybolt*, 461 NW2d 729, 737 [Minn Ct App 1990]; *see People v Pribble*, 72 Mich App 219, 224, 249 NW2d 363, 366 [1976]). As impartiality is inviolably secured by the constitutional guarantee of a jury trial, a defendant has the absolute "right to have the conscience and mind of the juror tested by a declaration under oath" (*People v Casey*, 96 NY 115, 125 [1884]).

With these principles in mind, we believe that a defendant should not be compelled to have his or her guilt declared by a jury whose honesty and impartiality can be questioned, and that any verdict so rendered cannot be permitted to stand. That the triers of fact should be beyond suspicion is of paramount importance if the right to a fair and impartial jury is to be guarded and, were we to overlook the clear and unequivocal mandate imposed by CPL 270.15 (1) (a), we would be in effect condoning the denial of full assurance of these most cherished rights.

Moreover, we find the applicability of harmless error to be particularly inappropriate here due to the impossibility of quantifying or otherwise assessing the effect of this defect on the proceeding (*see e.g. People v Damiano*, 87 NY2d 477, 485 [1996]; *People v Hodge*, 53 NY2d 313, 320-321 [1981]; *People v Jones*, 47 NY2d at 416).[2] As the impaneling of jurors who have not sworn to truthfully answer the questions asked of them has "consequences that are necessarily unquantifiable and indeterminate" (*Sullivan v Louisiana*, 508 US 275, 282 [1993]; *see*

---

**2.** Similarly, the United States Supreme Court has reaffirmed the distinction between "trial error[s]"—ones which " 'occurred during presentation of the case to the jury' and [whose] effect may 'be quantitatively assessed in the context of other evidence presented in order to determine whether [they were] harmless beyond a reasonable doubt' " (*United States v Gonzalez-Lopez*, 548 US 140, 148 [2006], quoting *Arizona v Fulminante*, 499 US 279, 307-308 [1991])—and "structural defects"—those that "affect[ ] the framework within which the trial proceeds, rather than simply [constituting] an error in the trial process itself" (*Arizona v Fulminante*, 499 US at 309-310; *see Neder v United States*, 527 US 1, 7-9 [1999]). With respect to the latter, these errors are of such magnitude that they "transcend[ ] the criminal process" and, therefore, "defy analysis by 'harmless error' standards" (*Arizona v Fulminante*, 499 US at 309, 311; *see United States v Gonzalez-Lopez*, 548 US at 148; *Sullivan v Louisiana*, 508 US 275, 281-282 [1993]; *Vasquez v Hillery*, 474 US 254, 263 [1986]; *Waller v Georgia*, 467 US 39, 49 n 9 [1984]; *Payne v Arkansas*, 356 US 560, 568 [1958]).

*United States v Gonzalez-Lopez*, 548 US 140, 150 [2006]), to require defendant to "undertake the well-nigh impossible task of proving prejudice" would render meaningless the right to an impartial jury (*People v Jones*, 47 NY2d at 417). Indeed, although "[w]e presume that jurors follow their oaths [and] answer the questions put to them truthfully" (*People v Harris*, 98 NY2d 452, 481 [2002]; *see People v Acevedo*, 69 NY2d 478, 488 [1987]), no such presumption arises here. Further, it is not for us to speculate as to what disqualifications may have remained hidden behind the unsworn answers of the prospective jurors.

In conclusion, we hold that the complete failure to provide the oath of truthfulness to the prospective jurors constituted a clear violation of the statutory mandate of CPL 270.15 (1) (a), dissolved an important safeguard to defendant's constitutional right to a fair trial by an impartial jury and invalidated the entire trial (*see People v Wicks*, 76 NY2d 128, 132 [1990]; *People v Mayo*, 48 NY2d 245, 252 [1979]; *People v Felder*, 47 NY2d 287, 296 [1979]).

CARDONA, P.J., KANE and STEIN, JJ., concur; CARPINELLO, J., not taking part.

Ordered that the judgment is reversed, on the law, and matter remitted to the County Court of Rensselaer County for a new trial.