[947 NE2d 146, 922 NYS2d 255]

In the Matter of STATE OF NEW YORK, Respondent, v ANDREW O., Appellant.

Argued February 8, 2011; decided April 5, 2011

### APPEARANCES OF COUNSEL

*Mental Hygiene Legal Service*, Albany (*Shannon Stockwell* and *Sheila E. Shea* of counsel), for appellant.

*Eric T. Schneiderman, Attorney General*, Albany (*Kathleen M. Treasure, Barbara D. Underwood* and *Andrea Oser* of counsel), for respondent.

### OPINION OF THE COURT

MEMORANDUM.

The order of the Appellate Division should be reversed, with costs, and a new trial ordered.

On August 15, 2007, the Attorney General filed a petition in Supreme Court against Andrew O., a detained sex offender, seeking his civil management pursuant to article 10 of the Mental Hygiene Law (*see* Mental Hygiene Law § 10.03 [g]; § 10.06 [a]). Supreme Court subsequently found probable cause to believe that Andrew O. was a sex offender requiring civil management (*see* Mental Hygiene Law § 10.06 [g], [k]; § 10.03 [q]). At the ensuing jury trial, Andrew O.'s expert—his only witness—testified that Andrew O. did not suffer from a mental abnormality within the meaning of article 10 (*see* Mental Hygiene Law §§ 10.07, 10.03 [i]). The State's attorney attacked the expert's credibility on the basis of his religious beliefs and affiliation, among other things. For example, during cross-examination, he asked the expert, a psychologist, about his religion of Yoism, which the expert described as similar to Unitarianism; this religion's basic tenets; and whether Yoism was based upon a historical text. Andrew O.'s counsel objected repeatedly and fruitlessly to this line of questioning. When he subsequently moved to strike all statements related to Yoism, the trial judge denied the motion on the ground that the expert was one of this religion's cofounders and not merely a follower.

During his closing statement, the State's attorney reprised the theme of the expert's religious beliefs, telling the jurors that they would "want to know" about the expert's religion "because

that would have an impact on [their] decision whether to consider that doctor's opinion as being valid"; and that they would "want to know if that doctor had founded a religion [and] the saints of that religion were Bob Marley, and Timothy Leary, and Bob Dylan." He also warned the jurors that there was "a child out there" who would be affected by their decision, and asked rhetorically if they "want[ed] another victim to have to come in [in order] to find mental abnormality." When Andrew O.'s counsel objected, the trial judge told the jurors that "[w]hat the lawyers say to you, what the lawyers say to each other, or say to me is not evidence"; and that the only evidence to be considered in rendering a verdict was the testimony received and exhibits admitted.

The jury determined that Andrew O. was a detained sex offender who suffers from a mental abnormality (see Mental Hygiene Law § 10.07 [d]); and after a bench trial, Supreme Court concluded that Andrew O. was a dangerous sex offender requiring confinement, and so committed him to a secure treatment facility (see Mental Hygiene Law § 10.07 [f]; § 10.03 [e]). Upon Andrew O.'s appeal of the jury verdict, the Appellate Division affirmed, with one Justice dissenting. The majority considered the cross-examination of the expert about his religious beliefs to be improper, but harmless "within the context of the entire trial" (68 AD3d 1161, 1166 [3d Dept 2009]). Further, the majority did not view the inappropriate remarks made by the State's attorney during summation sufficient, either individually or in the aggregate, to compromise Andrew O.'s right to a fair trial in light of the judge's instruction. The dissenting Justice concluded that the religious inquiry could have substantially influenced the jury's verdict since the expert's credibility was critical to Andrew O.'s case.

The outcome of this appeal is controlled by our decision in *People v Wood* (66 NY2d 374 [1985]). In that case, the defendant met a woman at a bar, had sex with her, and then decided to kill her, apparently for no reason; after succeeding in that effort but failing to take his own life, he was arrested and pleaded insanity. His principal expert was a psychiatrist who chose to affirm rather than swear to tell the truth. The prosecutor challenged the psychiatrist's affirmation, suggesting that his failure to "swear to God to tell the truth, nothing but the truth" meant that he was lying on the stand; and went so far as to ask the psychiatrist, "Do you believe in God, period?" (66 NY2d at 377.) Defense counsel's multiple objections were repeatedly overruled. The trial court later provided a corrective instruction,

telling the jurors that whether the psychiatrist swore or affirmed was irrelevant. The jury convicted, and the defendant appealed.

The Appellate Division affirmed over a two-Justice dissent, concluding that while the examination of the psychiatrist's religious views was inappropriate, it was harmless. We reversed, stating that

> "[w]hile we decline to hold that such questioning constitutes error per se, we hold that, *except under extraordinary circumstances*, it must be deemed sufficiently prejudicial to require a new trial, at least where the trial judge fails to give a prompt and clear corrective instruction" (66 NY2d at 376 [emphasis added]).

As we observed, "[w]ith limited exceptions . . . , any attempt to discredit or otherwise penalize a witness because of his religious beliefs . . . is improper, because those factors are irrelevant to the issue of credibility" (*id.* at 378).

The State contends that there are extraordinary circumstances here principally because the evidence of Andrew O.'s mental abnormality was overwhelming. The trial, however, boiled down to a battle of the experts in which Andrew O.'s expert was portrayed as unreliable because he adhered to an out-of-the-mainstream religion. It is impossible to know whether or to what extent the jury's assessment of the expert's testimony was prejudiced as a result. And importantly, the trial judge did not "act as a saving grace, handling the episode promptly and forcefully" (*id.* at 380 [internal quotation marks omitted]); indeed, he overruled objections to the improper cross-examination. Additionally, the judge failed to sustain an objection to the State's attorney's admonition to the jurors that they would be at fault if Andrew O. molested another child. Rather than striking and directing the jurors to disregard this inflammatory commentary, he merely reminded them that argument is not testimony. Finally, we have considered Andrew O.'s remaining contentions alleging evidentiary error and find them to be without merit.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, READ, SMITH, PIGOTT and JONES concur in memorandum.

Order reversed, etc.