(December 22, 2011)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GEORGE FORD JR., Appellant. [935 NYS2d 368]—

Lahtinen, J.

During the early morning hours of July 8, 2007, defendant ran over and killed the 12-year-old female victim with his Ford truck on Will Warner Road, an unlit, dirt road in the Town of Otselic, Chenango County. Defendant had picked up the victim at her home shortly after 11:00 P.M. on July 7, 2007 to babysit his three-year-old child. There was considerable conflicting evidence regarding what transpired between when defendant picked up the victim and when he arrived with her dead body at about 4:30 P.M. on July 8, 2007 at the hospital. Defendant contended that he accidentally ran over the victim at approximately 12:00 P.M. when he attempted to turn his truck around at a time when she was outside the vehicle to view horses.

Police learned early in their investigation that defendant's wife, suspecting he was engaged in an extramarital affair, had previously placed a global position system (hereinafter GPS) tracking key in defendant's truck. Information from the GPS, together with additional evidence gathered during the investigation, resulted in police concluding that defendant had taken the victim to the location of an uninhabited seasonal residence on Will Warner Road and stayed there for three hours (from about 12:00 P.M. to 3:00 P.M.), the victim attempted to escape from him on foot, he found her a short distance from the seasonal residence and intentionally ran over her with his truck. As a result, although defendant had initially been arrested for reckless endangerment, he was eventually indicted on a single count of murder in the second degree. Following a nonjury trial, County Court found defendant guilty of the charged crime. Defendant was sentenced to a term of 25 years to life in prison and now appeals.

Defendant initially argues that there was inadequate proof

that he intended to kill the victim and, thus, his conviction was not supported by legally sufficient evidence and was against the weight of the evidence. "Generally, including a circumstantial evidence case, the standard of [appellate] review in determining whether the evidence before the [factfinder] was legally sufficient . . . is whether the evidence, viewed in the light most favorable to the People, could lead a rational trier of fact to conclude that the elements of the crime had been proven beyond a reasonable doubt" (*People v Rossey*, 89 NY2d 970, 971 [1997] [internal quotation marks and citation omitted]; *see People v Cancer*, 16 AD3d 835, 836-837 [2005], *lv denied* 5 NY3d 826 [2005]). Intent may be inferred from a defendant's actions and surrounding circumstances (*see People v Rodriguez*, 17 NY3d 486, 489-490 [2011]; *People v Molina*, 79 AD3d 1371, 1376 [2010], *lv denied* 16 NY3d 861 [2011]; CJI2d[NY] Culpable Mental States—Intent).

Defendant and his wife had been at a party on July 7, 2007 during which defendant consumed alcohol as well as cocaine. He left the party early because of a stomach problem, but his wife remained at the party. He went to their home, changed into pajama bottoms and, intending to return to the party, picked up the victim to babysit. Upon arriving at his home with the victim, defendant's wife unexpectedly returned home from the party, so defendant set out to drive the victim about one mile north on Route 26 back to her home. According to a statement that defendant gave to police, the victim inquired about seeing horses, so he turned right onto Will Warner Road and headed east until stopping in the vicinity of horses. He claimed that the victim exited the truck to get a better view and, while making a "k-turn," he got stuck, accelerated the truck, got stuck again and, when he got out, observed that he had run over the victim. He stated that this occurred around midnight and the delay of over four hours in transporting the victim to the hospital was caused by difficulty putting her body in the truck and getting lost en route to the hospital.

The police investigation revealed problems with defendant's version of events. The place where the victim died was a considerable distance from any horses and in an area of poor visibility to see the field. Evidence at the scene indicated that the truck hit the victim while traveling west (downhill) on Will Warner Road, not east (uphill) as claimed by defendant. Defendant denied being at the nearby seasonal residence on Will Warner Road, but tracks left by his truck, as well as a hypodermic needle with traces of his blood, were found at such location. The GPS reading of defendant's movements in the truck were,

from the time he first picked up the victim, at odds with his version. Among other discrepancies, the GPS revealed that, when defendant left his home to take the victim to her home, he turned from Route 26 onto Stage Road. Stage Road runs basically parallel—and south of—Will Warner Road and then veers north to where Will Warner Road intersects it at a T intersection. He took a left at the intersection of Stage Road and Will Warner Road and headed west on Will Warner Road, then stopped for about three hours at the seasonal residence.

Shortly before 3:00 P.M., the truck left the residence, turned left (east) on Will Warner Road, traveled for a short distance, turned around and moved rapidly back to the seasonal residence and continued (now going west) past the residence, steadily decreasing its speed, and slowing to 4 to 6 miles per hour for about a minute. An expert produced by the People testified that, at 3:03 P.M., while approaching the scene of the victim's death, the GPS deflected to the left, which was consistent with defendant targeting the victim and crushing her against a south bank of Will Warner Road with the driver's side plow frame of the truck. Further, there was proof that, prior to 3:00 P.M., defendant had not been at the place on Will Warner Road where the victim was hit by his truck, and the only place where the truck had stopped that she could have exited was at the seasonal residence. Viewed most favorably to the People, there was ample evidence that defendant took the young victim to a secluded area for three hours in the middle of the night, she escaped his presence on foot, he found and followed her with his truck, and then intentionally ran over her with the truck.

As for defendant's weight of the evidence argument, a different verdict would not have been unreasonable and, thus, we "must, like the trier of fact below, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (*People v Bleakley*, 69 NY2d 490, 495 [1987] [internal quotation marks and citation omitted]). Defendant testified and offered various explanations regarding the People's proof, including that he discovered the GPS prior to leaving his home with the victim, threw the GPS (as well as the hypodermic needle) out the truck window at the seasonal residence, proceeded to where the accident occurred further west on Will Warner Road and, after the accident, decided to retrieve the GPS. Although this description made his movements more consistent with the GPS, it was at odds with what he had told police on the morning of the incident. County Court rejected defendant's trial explanation

for the presence of the GPS at the seasonal home for about three hours. After evaluating the evidence in the record in a neutral light and according deference to the factfinder's opportunity to view the witnesses, we are unpersuaded that the verdict was against the weight of the evidence.

Defendant next asserts that all statements and evidence obtained by police after 8:15 P.M. on July 8, 2007 should have been suppressed because he was in police custody, but the police lacked probable cause to detain him. We cannot agree. Testimony at the suppression hearing established that defendant agreed to travel with police from the hospital to the Sheriff's station, he was not handcuffed, *Miranda* rights were read to him several times, and he was permitted cigarette breaks during which he went outside. The proof supports County Court's determination that defendant was not in custody (*see People v Langlois*, 17 AD3d 772, 773-774 [2005]; *People v Kreydatus*, 305 AD2d 935, 936 [2003], *lv denied* 100 NY2d 595 [2003]). Moreover, defendant gave information in his oral and written statements to police that provided probable cause of reckless endangerment, including that, despite knowing the young victim was in close proximity to his truck on an unlit road, he nevertheless "nailed" the gas pedal, accelerating the truck rapidly.

With regard to defendant's contention that prosecutorial misconduct—including comments about what may have transpired during the three hours at the seasonal house—deprived him of a fair trial, we note that this was a nonjury trial and there is no indication that County Court's verdict was influenced by such alleged conduct (*see People v Green*, 84 AD3d 1499, 1500 [2011]). Defendant's assertion that his counsel was ineffective is without merit. Review of the record reveals appropriate pretrial motions, pertinent objections, effective and extensive cross-examination of witnesses, a reasonable defense strategy and the otherwise rendering of meaningful representation (*see People v Benevento*, 91 NY2d 708, 712-713 [1998]). Finally, finding neither an abuse of discretion nor extraordinary circumstances, we decline to disturb the sentence imposed by County Court (*see People v Sanchez*, 75 AD3d 911, 914-915 [2010], *lv denied* 15 NY3d 895 [2010]; *People v Booker*, 53 AD3d 697, 704 [2008], *lv denied* 11 NY3d 853 [2008]).

Rose, J.P., Kavanagh, McCarthy and Garry, JJ., concur. Ordered that the judgment is affirmed.