*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  April 16, 2015                    104705
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                        Respondent,

        v                                        MEMORANDUM AND ORDER

THOMAS A. CHANCEY,
                        Appellant.
_____

Calendar Date:  February 11, 2015

Before:  Peters, P.J., Garry, Rose and Lynch, JJ.

_____

        Eugene P. Grimmick, Troy, for appellant.

        Joel E. Abelove, District Attorney, Troy (Vincent J.
O'Neill of counsel), for respondent.

_____

Rose, J.

        Appeal from a judgment of the County Court of Rensselaer
County (McGrath, J.), rendered March 9, 2006, upon a verdict
convicting defendant of the crime of murder in the second degree.

        Defendant and the victim lived together in a long-term
relationship that began to deteriorate early in 2005, with mutual
allegations of infidelity and incidents of physical violence and
verbal abuse.  These incidents culminated on August 12, 2005,
when defendant killed the victim by repeatedly striking her in
the head with a hammer.  He was indicted on one count of murder
in the second degree and, after a jury trial at which he denied
that he intended to cause the victim's death and raised the
affirmative defense of extreme emotional disturbance, he was
convicted as charged.  County Court sentenced him to 25 years to

life in prison, and he now appeals.

Defendant argues that the verdict is against the weight of the evidence because he did not intend to cause the death of the victim and he acted under the influence of an extreme emotional disturbance. Where, as here, a different verdict would not have been unreasonable, we will "weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (People v Molina, 79 AD3d 1371, 1374 [2010], lv denied 16 NY3d 861 [2011] [internal quotation marks and citations omitted]; accord People v Ford, 90 AD3d 1299, 1301 [2011], lv denied 18 NY3d 994 [2012]). Murder in the second degree requires proof that defendant intentionally caused the victim's death (see Penal Law § 125.25 [1]). If the affirmative defense of extreme emotional disturbance is established by showing that the homicidal act was "an understandable human response deserving of mercy" (People v Casassa, 49 NY2d 668, 680-681 [1980], cert denied 449 US 842 [1980]), the conviction will be reduced to manslaughter in the first degree (see Penal Law § 125.25 [1] [a]; People v Harris, 95 NY2d 316, 318-319 [2000]; People v Benson, 119 AD3d 1145, 1146-1147 [2014], lv denied 24 NY3d 1118 [2015]). The defense, which must be established by a preponderance of the evidence (see Penal Law §§ 25.00 [2]; 125 [1] [a]), has two components, a subjective one requiring that the defendant "acted under the influence of extreme emotional disturbance" and an objective one requiring "a reasonable explanation" for the emotional disturbance "determined from the viewpoint of a person in the defendant's situation under the circumstances as [the] defendant believed them to be" (People v Cass, 18 NY3d 553, 561 [2012] [internal quotation marks and citation omitted]; see People v Harris, 95 NY2d at 319; People v Pavone, 117 AD3d 1329, 1331-1332 [2014], lv granted 24 NY3d 963 [2014]).

Defendant, who was 6 feet 2 inches tall and weighed 175 pounds, admitted that, in February 2005, he and the victim, who was 5 feet 5 inches tall and weighed 140 pounds, engaged in a heated, physical argument in his car while he was driving on the Thruway. In the course of the argument, which concerned the victim's infidelity to defendant, he struck her, kicked her out of the car and left her stranded on the side of the highway.

Following that incident, their arguments continued, with the victim also repeatedly accusing defendant of being unfaithful, a charge that he denied. Defendant eventually left their apartment at the victim's request, but he slept in his car and called her "8 million times" until she allowed him to return. Defendant testified that the week leading up to the fatal encounter was marked with continuing arguments, and he took back the engagement ring that he had given to the victim and she again asked him to move out of the apartment. They also continued to argue about, among other things, his plan to take back a computer that he had purchased for her. Defendant then spent a few nights away from the apartment but, on the day prior to the killing, he and the victim engaged in another heated argument that ended when the victim locked herself in her vehicle and called 911 in an attempt to get away from defendant, who broke one of the windows in the car before fleeing the scene.

On the fatal night, the victim picked defendant up at his social club and they argued in her vehicle, with the victim apparently slashing defendant with a sharp nail-care instrument. The couple proceeded to the apartment to dress defendant's cuts, where the argument escalated. After asking if defendant was going to "give [her] an ass whipping," the victim picked up defendant's hammer, to which he responded, "you want to hit me with a hammer[?]" The victim swung the hammer at defendant but missed, then dropped it on the floor and sat down at her computer desk. As they continued to exchange angry recriminations, defendant picked up the hammer and hit the victim with it, testifying that he only remembers striking her once before he "went blank." The medical examiner who conducted the victim's autopsy testified that she had been struck three separate times on the back of her head, causing severe skull fractures and brain injury secondary to blunt force trauma. Trial evidence suggested that defendant moved the victim's body after he killed her and attempted to clean up her blood before leaving, but then left her on the floor of the apartment. He was arrested the next day.

"Defendant's intent may be inferred from both his actions and the surrounding circumstances" (People v Johnson, 106 AD3d 1272, 1278 [2013] [citations omitted], lvs denied 21 NY3d 1041, 1043, 1045, 1046 [2013]; see People v Kenyon, 108 AD3d 933, 937

[2013], lv denied 21 NY3d 1075 [2013]). In light of the number and force of the blows inflicted while the victim was in a defenseless position, and giving appropriate deference to the jury's ability to view the witnesses and assess their credibility, we find no basis to conclude that the verdict finding that defendant acted with intent to cause the victim's death is against the weight of the evidence (see People v Ford, 90 AD3d at 1301-1302; People v Molina, 79 AD3d at 1376). Nor do we find the verdict rejecting the affirmative defense of extreme emotional disturbance to be against the weight of the evidence (see People v Benson, 119 AD3d at 1148). Rather than reflecting a one-time, out-of-character loss of self-control resulting from the stresses that defendant had been experiencing (see e.g. People v Sepe, 111 AD3d 75, 87 [2013], appeal dismissed 22 NY3d 1126 [2014]), the evidence supports a conclusion that the murder reflected the mutually abusive and physically violent nature of defendant's relationship with the victim, her escalating antipathy toward him and his ultimate reaction out of sheer anger, jealousy and an attempt to salve his wounded pride.

We are also unpersuaded by defendant's contention that he was deprived of a fair trial by the prosecutor's comments during summation. The prosecutor's statements that defendant was a "domestic abuser" were fair comments in light of the evidence of defendant's physically violent relationship with the victim and as a counterargument to defendant's claim that the victim's death was an isolated incident (see People v Simmons, 111 AD3d 975, 980-981 [2013], lv denied 22 NY3d 1203 [2014]; People v Rowe, 105 AD3d 1088, 1091 [2013], lv denied 21 NY3d 1019 [2013]; People v Dickson, 58 AD3d 1016, 1018 [2009], lv denied 12 NY3d 852 [2009]). Although there was no evidence to support the prosecutor's comment that defendant was a "[s]talker," and the comment that defense counsel was "play[ing] games" was inappropriate, defendant's objections were sustained, County Court gave an immediate curative instruction to the jury regarding the stalker comment and the fleeting nature of these two comments do not reflect a "flagrant and pervasive pattern of prosecutorial misconduct" (People v Dickson, 58 AD3d at 1018 [internal quotation marks and citation omitted]; see People v Story, 81 AD3d 1168, 1169 [2011]; People v Cardenas, 79 AD3d 1258, 1262 [2010], lv denied 16 NY3d 857 [2011]).

Defendant's claim that County Court failed to administer the oath of truthfulness required by CPL 270.15 (1) (a) to the potential jurors is not preserved for our review, as it must be (see CPL 470.05 [2]; People v McDade, 64 AD3d 884, 888 [2009], affd 14 NY3d 760 [2010]; People v Hampton, 64 AD3d 872, 877 [2009], lv denied 13 NY3d 796 [2009]; compare People v Hoffler, 53 AD3d 116, 120-121 [2008], lv denied 11 NY3d 832 [2008]).  In the absence of any objection drawing County Court's attention to the alleged impropriety, no record was made to establish that the appropriate oath was not administered to the potential jurors. Moreover, contrary to defendant's contention, we have not held that the failure to give the oath is a "mode of proceedings" error that qualifies as a narrow exception to the preservation requirement (People v Becoats, 17 NY3d 643, 650-651 [2011], cert denied ___ US ___, 132 S Ct 1970 [2012]).  Rather, if properly preserved, the error is "fundamental," meaning that it requires reversal even in the absence of any showing of prejudice suffered by a defendant (People v Hoffler, 53 AD3d at 121, 122-123). Although defendant claims that, given our holding in People v Hoffler (supra) defense counsel's failure to raise any objection constitutes ineffective assistance of counsel, we note that the trial in this matter occurred prior to our decision in Hoffler.

Finally, given the seriousness of the crime and defendant's criminal history, we find no abuse of discretion or extraordinary circumstances warranting a reduction of the sentence (see People v Cade, 110 AD3d 1238, 1240 [2013], lv denied 22 NY3d 1155 [2014]; People v Kenyon, 108 AD3d at 942; People v Rollins, 51 AD3d 1279, 1282-1283 [2008], lvs denied 11 NY3d 922, 930 [2009]).

Peters, P.J., Garry and Lynch, JJ., concur.

ORDERED that the judgment is affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court