People v Brenda WW. (2023 NY Slip Op 06564)

People v Brenda WW.

2023 NY Slip Op 06564

Decided on December 21, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 21, 2023

113247
[*1]The People of the State of New York, Respondent,
v
Brenda WW., Appellant.

Calendar Date:October 19, 2023

Before:Lynch, J.P., Aarons, Pritzker, McShan and Mackey, JJ.

Veronica Reed, Schenectady, for appellant.
William G. Gabor, District Attorney, Wampsville (J. Sam Rodgers of counsel), for respondent.

McShan, J.
Appeal from an order of the County Court of Madison County (Patrick J. O'Sullivan, J.), entered October 13, 2021, which denied defendant's motion for resentencing pursuant to CPL 440.47, after a hearing.
Defendant was indicted and charged in 2008 with manslaughter in the first degree, assault in the first degree and criminal possession of a weapon in the third degree. The charges stemmed from an incident wherein defendant stabbed her live-in paramour in the back with a butcher knife as he was kneeling on the floor. Defendant was convicted as charged and was sentenced in August 2008, as a second felony offender, to prison terms of 20 years followed by five years of postrelease supervision upon the manslaughter and assault convictions and to a lesser term of imprisonment upon the weapon conviction, all sentences to run concurrently. Following a retrial, defendant again was convicted of the charged crimes and was sentenced in January 2010 to the same concurrent terms of imprisonment. Defendant appealed her conviction, and this Court affirmed.
In March 2020, defendant moved for resentencing pursuant to CPL 440.47 seeking to invoke the alternative sentencing provisions of the Domestic Violence Survivors Justice Act (hereinafter the DVSJA) (see CPL 440.47; Penal Law § 60.12, as amended by L 2019, ch 31, § 1; L 2019, ch 55, part WW, § 1). Following a hearing, County Court (O'Sullivan, J.) denied defendant's request finding, among other things, that any domestic abuse existing at or around the time of the underlying offense was neither substantial nor a significant contributing factor in defendant's conduct on the night in question. This appeal by defendant ensued (see CPL 440.47 [3] [a]).
The DVSJA, intended to provide a means for ameliorating harsh sentences imposed upon survivors of domestic violence, "(1) allow[s] judges to sentence survivors to alternative sentences of imprisonment including determinate sentences and, in some cases, community-based alternative-to incarceration program[s] and (2) provid[es] survivors currently in prison the opportunity to apply for resentencing, granting much-deserved relief for incarcerated individuals who pose no threat to public safety" (Assembly Mem in Support, Bill Jacket, L 2019, ch 31 at 6; see People v Burns, 207 AD3d 646, 648 [2d Dept 2022]). In seeking to accomplish these goals, the DVSJA provides an alternative sentencing scheme that the sentencing court may apply if it determines that a defendant has established, by a preponderance of the evidence, that "(a) at the time of the instant offense, the defendant was a victim of domestic violence subjected to substantial physical, sexual or psychological abuse inflicted by a member of the same family or household as the defendant as such term is defined in CPL 530.11 (1); (b) such abuse was a significant contributing factor to the defendant's criminal behavior; and (c) having regard for the nature and circumstances of the crime and the history, character and [*2]condition of the defendant, that a sentence of imprisonment pursuant to Penal Law §§ 70.00, 70.02, 70.06 or 70.71 (2) or (3) would be unduly harsh" (People v T.P., 216 AD3d 1469, 1471 [4th Dept 2023] [internal quotation marks and brackets omitted]; see People v Burns, 207 AD3d at 648; People v Addimando, 197 AD3d 106, 111-112 [2d Dept 2021]). In accordance with the statute, domestic violence may take the form of "substantial physical, sexual or psychological abuse" (Penal Law § 60.12 [1] [a]), and a reviewing court "may consider any fact or circumstances relevant to the imposition of a new sentence which are submitted by the [defendant] or the district attorney" (CPL 440.47 [2] [e]).
Defendant first assails County Court's determination that the abuse she suffered at the time of her criminal behavior was not "substantial." In response, the People describe the abuse suffered by defendant as "moderate" and "mundane," and further point to the mutually-abusive relationship between defendant and the victim as evidence that defendant was not abused within the meaning of the statute. In support of her application, defendant included various submissions that paint a picture of the physical abuse she suffered at the hands of the victim, including references to being burned with cigarettes, pushed down a set of stairs, having her teeth chipped, neck stomped and nose broken. At trial, defendant testified that, on one occasion, the victim threw a plate at her causing a laceration to her temple, and hospital records corroborated that testimony. Defendant further testified that in 2005 the victim "beat [her] so bad" that she sustained a broken nose and black eyes. In addition to the foregoing, defendant testified that on more than one occasion in 2006, she awoke to find a knife stabbed into the mattress next to her. At the resentencing hearing, defendant's granddaughter recounted an instance that occurred at some point in either 2006 or 2007 wherein the victim called defendant names, pulled her hair and threw porcelain figurines at her. Defendant's son-in-law and daughter also testified that they had witnessed a shoving match between defendant and the victim in 2004 and that, on one occasion in the summer of 2006, the victim pulled defendant's hair, threw her to the ground and stomped on her leg, which resulted in a fracture. Defendant's daughter testified that she saw evidence of physical injuries to defendant at least once a week and that defendant sustained a broken nose at the hands of the victim on at least four occasions, and that account was consistent with her representations to the probation officer when she was interviewed prior to defendant's sentencing.
Beyond these specific examples, defendant had a lengthy history of exposure to abusive relationships, having witnessed her mother being abused by her father, and her sister dying from injuries that were attributable to domestic violence. Defendant was also the victim of abuse in her various relationships [*3]preceding her cohabitation with the victim. Defendant's mother's statement in the presentence report, as recounted by the probation officer, noted defendant's history of abuse, indicating her belief that defendant had "snapped" after suffering for so long. Further, the mother stated that defendant's attempts to extricate herself from the victim's abuse prompted either threats of suicide on his part unless defendant returned home or further abusive conduct in the way of seeking defendant at her mother's home, where he would bang on the windows and yell expletives. As told by defendant's mother, defendant would eventually acquiesce to this unrelenting pressure in order to spare her mother any embarrassment.
Consistent with the foregoing assertions, a forensic report following an assessment by Norman J. Lesswing, a clinical psychologist, that occurred prior to defendant's trial, opined that defendant "is a severely traumatized, depressed, and alcoholic woman who essentially has been exposed to a continuous and unrelenting sequence of domestically violent relationships, throughout her development and adult life." In her account of abuse to Lesswing, defendant noted that she initially had not fought back against the victim's acts of violence, but eventually became defensive until such point in their relationship when they were engaged in "knock-down, drag-out" altercations two to three times a week up until the time of the victim's death. Lesswing concluded that defendant's relationship with the victim "had been psychologically fused into a pattern of alcoholism, verbal and physical abuse, brief efforts by her to escape, and desperate attempts by him to reunite" and that "[t]heir roles of victim and perpetrator were deeply enmeshed, and [the victim's] death came about as a consequence of [defendant's] singular action, which was uncharacteristic, [without reflection], impulsive, and spontaneous."
Based on the foregoing, we disagree with County Court's determination that defendant's abuse was anything less than "substantial," as defendant's own account of the specific acts of violence, which is largely corroborated by various witnesses in the record, and the injuries suffered as well as the psychological abuse that came alongside such violence was sufficient to fall under the ambit of the DVSJA. Although the court accurately concluded that the relationship between defendant and the victim was mutually abusive, that does not foreclose a determination that defendant was a victim of abuse (see generally People v Chancey, 127 AD3d 1409, 1411-1412 [3d Dept 2015], lv denied 25 NY3d 1199 [2015]; People v Theresa G., 78 Misc 3d 1139, 1141 [Sup Ct, Kings County 2023]).[FN1] Moreover, such conduct is readily explained in Lesswing's report as typical of those persons suffering from battered person syndrome, particularly in the case of defendant who had a lengthy history of exposure to domestic violence over the course of her life (see generally 1 NY Law of Domestic Violence [*4]§ 2:98 [3d ed]). Accordingly, it is our view that the record sufficiently established that defendant was routinely subjected to substantial physical and psychological abuse in various forms throughout her lengthy relationship with the victim and that such abuse was ongoing at the time of her criminal behavior (see People v Addimando, 197 AD3d at 115-117; compare People v Williams, 198 AD3d 466, 467 [1st Dept 2021], lv denied 37 NY3d 1165 [2022]).
We also find that the record establishes that such abuse was a "significant contributing factor" in defendant's criminal behavior (Penal Law § 60.12 [1] [b]). At the outset, the People's contention that defendant's alcohol abuse and her own violent conduct toward the victim establish that her conduct could not be attributed to her history of abuse is misplaced, as such factors do not negate the aforementioned history of abuse suffered by defendant and whether it played a significant role in her behavior (see People v Theresa G., 78 Misc 3d at 1141). Moreover, the fact that defendant was not, as noted by County Court, in "imminent danger" at the time of her criminal behavior is not dispositive to the inquiry pursuant to the DVSJA. Rather, that consideration speaks more specifically to defendant's entitlement to a justification charge, which is a distinct legal determination from the one at issue — i.e., whether the domestic violence suffered by defendant was a significant factor in her criminal conduct. Indeed, the DVSJA is clear that "[a] court may determine that such abuse constitutes a significant contributing factor . . . regardless of whether the defendant raised a [justification or duress] defense" at trial (Penal Law § 60.12 [1]; see People v T.P., 216 AD3d at 1471; People v Burns, 207 AD3d at 648; see also NY Assembly Debate on Assembly Bill A03974, Mar. 4, 2019 [Assembly tr] at 12-13). In other words, entitlement to the compassionate relief afforded by the DVSJA is not predicated on whether a defendant's criminal conduct was justified; rather, the reviewing court must ask whether such conduct is significantly attributable to the ongoing abuse that the defendant has suffered.
Under that framework, we note that defendant's trial testimony reflected that, on the day of the incident, the victim came home from work and began "slamming beers down," calling her names, slapping her, pulling her hair and telling her that he wished that she were dead. After defendant attempted to hide the remaining beer in their home, the victim threw medicated foot powder in defendant's face. Under the particular circumstances of this case, the lengthy history of abuse suffered by defendant cannot be divorced from the victim's acts immediately preceding defendant's criminal behavior and must be considered cumulatively (see People v Smith, 69 Misc 3d 1030, 1038 [County Ct, Erie County 2020]). Moreover, although Lesswing's report was inadmissible at defendant's trial owing to her failure to establish entitlement to a justification [*5]defense, it is our view that the conclusions in the report concerning the connection between defendant's conduct and the criminal behavior are properly considered as part of the DVSJA inquiry. Altogether, we find that such evidence, considered alongside the various witness accounts, was sufficient to establish the required nexus between the abuse suffered by defendant and her criminal behavior.
As to the final prong of the analysis, the language of the statute is permissive in terms of whether any individual circumstances warrant the compassionate exercise of a sentencing reduction, and the decision as to whether to grant relief is discretionary rather than mandatory (see People v Addimando, 197 AD3d at 114). In this respect, the final prong in the DVSJA requires that the reviewing court determine whether the "nature and circumstances of the crime and the history, character and condition of the defendant" render the sentence imposed "unduly harsh" (Penal Law § 60.12 [1] [c]).[FN2]
We initially note that the legislative materials underpinning passage of the DVSJA reflect that consideration in its enactment was predicated in part on the understanding that the alternative sentencing structure provided for in the statute "is particularly appropriate [for women survivors of domestic violence,] as they most often have no prior criminal records, no history of violence and extremely low recidivism rates" (Assembly Mem in Support, Bill Jacket, L 2019, ch 31 at 7). However, we note that the DVSJA does not exclude all individuals with felony convictions, such as defendant, as it specifically identifies, in addition to those convicted of certain sex crimes, only those defendants who have been convicted as persistent felony offenders or second violent felony offenders as those precluded from seeking relief (see Penal Law § 60.12 [1]). In this respect, while we are mindful that defendant has an extensive criminal history prior to the criminal behavior under review, a close inspection of that history reflects that the majority of her prior convictions were attributable to her longstanding struggle with substance abuse, which is not uncommon for those persons subjected to substantial domestic violence (see generally Jane C. Murphy & Margaret J. Potthast, Domestic Violence, Substance Abuse, and Child Welfare: The Legal System's Response, 3 J Health Care L & Pol'y 88, 94 [1999]). As to her past conviction for filing a false report of domestic violence, we would note that, although defendant falsely reported being raped by her ex-husband, the ex-husband had apparently acknowledged that there was "mutual physical contact" between the two. This is again consistent with the accounts that defendant was subjected to violence from her former paramours on various occasions over the course of her life. We therefore conclude that defendant's criminal history is not an impediment to granting her relief.
Further considerations in this case militate in favor of the compassionate [*6]relief afforded by the DVSJA. The presentence report, sentencing transcript and Lesswing's report all reflect that defendant was genuinely remorseful for her actions.[FN3] Moreover, defendant has no indicated discipline during her lengthy period of incarceration and, although the People focus on her failure to participate in sufficient programs or pursue furtherance of her education, it is our view that her involvement in domestic violence programming during her early years of incarceration is a factor that inures in her favor (cf. People v S.M., 72 Misc 3d 809, 815-816 [County Ct, Erie County 2021]). Altogether, we find that defendant established by a preponderance of the evidence that the facts and circumstances of her case warrant an alternative sentence, and we modify the judgment in accordance with Penal Law § 60.12 (8) (a) and (c).[FN4] In so concluding, we note that our determination is not intended to diminish the severity of defendant's criminal conduct or suggest that her conduct was justified (see People v Burns, 207 AD3d at 648; People v Addimando, 197 AD3d at 117-118). To this point, although our dissenting colleagues focus on whether defendant credibly recounted her actions at trial and at sentencing, which are now more than a decade old, that issue and the ensuing repercussions stemming from the lack of any justification for her conduct are encompassed in the lengthy sentence she received, which has largely been served as of this point. The fact that defendant was not entitled to a justification defense does not disqualify her from the compassionate relief afforded by the DVSJA. Defendant is not a perfect victim in any respect, and her own violent conduct certainly makes this inquiry a close call. However, the record before us establishes by a preponderance of the evidence that defendant has been repeatedly victimized by various individuals over the course of her life, which, as we have already discussed, explains much of her conduct. Altogether, it is our view that the totality of circumstances presented specifically by this case warrants relief pursuant to the DVSJA and its goal of providing sentencing alternatives for victims of domestic violence (see People v T.P., 216 AD3d at 1469; People v Burns, 207 AD3d at 649).
Aarons and Mackey, JJ., concur.
Pritzker, J. (dissenting). Although we do agree with the majority that the evidence preponderates in favor of defendant that (1) at the time of the offense, she was a domestic violence victim subjected to "substantial physical, sexual or psychological abuse" by her live-in paramour (hereinafter the victim) (Penal Law § 60.12 [1]), and (2) this abuse was a "significant contributing factor" to her criminal behavior in this incident (Penal Law § 60.12 [1]), it is our opinion that the nature and circumstances of this crime and the history, character and condition of defendant do not render defendant's original sentence unduly harsh. Specifically, the history of mutual violence between the parties[*7], the volume of alcohol defendant consumed the night of the incident, defendant's ever-changing story of the events of that night and her failure to take responsibility and accept that her actions caused the victim's death militate against the compassionate relief afforded by the Domestic Violence Survivors Justice Act (hereinafter the DVSJA) (see CPL 440.47; Penal Law § 60.12, as amended by L 2019, ch 31, § 1; L 2019, ch 55, part WW, § 1). Accordingly, we respectfully dissent.
At the outset, we must be clear that it is not our position that an individual who was in a mutually-violent relationship wherein drugs and alcohol were abused would never be entitled to be sentenced pursuant to the DVSJA. Nor is it our opinion that a defendant whose version of events has changed during the course of the criminal prosecution is not entitled to compassionate relief. Similarly, we do not believe that a domestic violence victim who intends to cause serious physical injury to his or her paramour is never entitled to compassionate relief. To the contrary, domestic violence is not a "one size fits all" situation; thus, sweeping characterizations or bright line rules as to what circumstances may or may not warrant a lenient sentence pursuant to the DVSJA would be futile. Rather, it is our opinion that this sui generis inquiry requires that the totality of the circumstances of each case must be thoroughly examined prior to deciding whether to grant a defendant the compassionate relief afforded by the DVSJA.
To that end, the record on appeal does not contain the entirety of the testimony and exhibits from defendant's retrial. Rather, it only contains defendant's testimony at the retrial, as well as a few pages of her grand jury testimony. It also contains the forensic psychological evaluation by Norman J. Lesswing, a licensed clinical psychologist who performed an evaluation of defendant five months after the incident.[FN5] These submissions paint the picture that the victim's death occurred when, during a domestic violence incident, defendant, in an attempt to "scare" the victim, "poked" him in the back with a knife while he was bent over a hamper looking for beer defendant had hidden. According to defendant, the victim "reared up," which drove the knife into his back. This injury led, only a short time later, to the victim's death. On those facts alone, it would appear that defendant is a candidate for the compassionate relief offered by the DVSJA. However, the submissions from the People that are contained in the record make clear that defendant's version of events does not paint the whole picture.
Defendant's testimony at the retrial reveals that, on the day of the incident, she had consumed between 8 and 10 beers in the six or so hours prior to the incident. Specifically, she testified that at least the last three beers that she consumed in the hours immediately preceding the incident were "Ice House" beers. Defendant explained that those particular beers had a[*8]"higher concentration of alcohol" than other beers. Nevertheless, because of her self-proclaimed "high tolerance," defendant testified that she did not feel intoxicated. Indeed, defendant's own testimony, as well as her report to Lesswing, demonstrated that she had a history of consuming excessive amounts of alcohol, "essentially [drinking] on a continuous basis during the . . . two or three years [prior to the incident]." Defendant also admitted to having used drugs, including crack cocaine, and that some of the arguments between her and the victim were fueled by drugs and alcohol.
In that vein, the record demonstrates that instances of violence and alcohol and drug use were commonplace in defendant and the victim's relationship. These domestic violence incidents were not one-sided. In fact, defendant admitted during trial that there were times when she started the arguments with the victim and there were times when she was the first to become physical. Additionally, in a sworn affidavit, the girlfriend of the owner of the home in which defendant and the victim's apartment was located averred that defendant and the victim constantly fought and that defendant was "always . . . yelling and beating [the victim] up." In another affidavit submitted by the People, the victim's boss swore that during the eight months prior to his death the victim came to work "with all kinds of injuries." Indeed, one time, the victim had severe burns on his forearms and told his boss that defendant threw boiling water at him. A coworker of the victim also signed an affidavit wherein he stated that the victim would come to work with an injury on a weekly basis and said that defendant was "mean." This coworker detailed the same instance wherein, the summer before his death, the victim claimed burns on his arms were due to defendant throwing boiling water at him. The coworker also discussed a time that the victim came to work with a cut on the back of one of his hands, which the victim attributed to defendant having stabbed him. Another time, in the months before the victim died, the coworker saw him walking down the road in the snow. When the coworker stopped to inquire, the victim stated that defendant had beaten him with a log. The coworker explained that the victim had a fat lip and a cut above his eye. Thus, although we do not, in any way, seek to diminish the seriousness of the domestic violence defendant endured, for the purposes of determining whether the nature and history of this case warrant the compassionate relief afforded by the DVSJA, it is important to consider that defendant was not the only victim in this tumultuous relationship.[FN6]
As to the events of the night the victim died, there is no question that defendant is the only person who was there that can explain what occurred. However, as the sole witness, it is troubling that defendant's credibility is, at best, questionable. To begin, defendant has a history of perjuring herself, as is demonstrated by [*9]her prior conviction for the attempt to offer a false statement to police. At trial, when defendant testified about this prior conviction, it was established that in the course of filing charges against her ex-husband, defendant signed a form wherein she claimed that her ex-husband had tried to "rape [her], and beat [her] up." Defendant admitted at trial that these allegations were "[a]bsolutely untrue" and that is why she pleaded guilty. Unfortunately, in the case at bar, the victim is unable to offer his side of the story.
Furthermore, defendant told an ever-changing story of the incident itself. In defendant's initial 911 call, she reported that the victim had walked into something and cut himself. In a written supporting deposition, one of the first responders averred that it was clear that the victim had been stabbed and was seriously injured. The first responder continued to ask defendant about an eight-inch butcher's knife with blood on the blade that was laying on the bed. Defendant stated she had been in the kitchen using the knife when the victim called out for help and that the blood on the knife came from defendant's hands. While the first responder was trying to save the victim, defendant exclaimed that she did not stab him. Later that night, in a written statement made to law enforcement, defendant swore that she was in her bedroom watching television when the victim staggered into the room with blood on his upper back near his right shoulder. She stated that defendant said he hit the corner of a counter in the kitchen or a knife, and defendant recalled leaving a knife pointing out on the counter while she was preparing dinner. At the retrial, defendant admitted that this statement was false. Indeed, a few hours after giving that statement, she gave another statement to law enforcement wherein she claimed that, after the victim poured medicated foot powder on her, he pushed her and called her names. Defendant was upset and then went into the kitchen and grabbed a butcher's knife. Defendant claimed that she did not know why she grabbed it. She then went into her bedroom where the victim was bent over defendant's dresser looking for beer. Defendant "took the knife and . . . stuck it in [the victim's] back." She stated that she did not realize the knife was going in, that it was "more of a jab" and that she thought it would "just scare him."
Eventually, defendant settled on the version of events that she gave to Lesswing, testified to at the retrial and provided to probation during the presentence investigation,[FN7] but certainly her differing versions of events call into question the veracity of her trial testimony. Significantly, the jury, in convicting defendant of manslaughter in the first degree, did not find defendant's version of events to be credible given that a conviction of this crime requires a determination by the jury that defendant, beyond a reasonable doubt, acted with "intent to cause serious physical injury to [the victim[*10]]" (Penal Law § 125.20 [1]). This is important to recognize because now, in this Court's review, we do not have the benefit of making credibility determinations, but the jury did. Moreover, here, in deciding defendant's resentencing application, the matter was not before the trial judge, as the record reflects that he had since retired. Thus, given that defendant opted not to testify at the resentencing hearing, the resentencing court also did not have the benefit of assessing defendant's credibility or, for that matter, defendant's remorse.
On that note, the majority opines that the presentence report, sentencing transcript and Lesswing's report all reflect that defendant was genuinely remorseful for her actions. Given the comments made at sentencing by County Court (McDermott, J.), who presided over both defendant's initial trial and the retrial at which defendant elected to testify, it is difficult to agree with the majority's assessment of defendant's sincerity. At sentencing, after defendant expressed that she had no intent to harm the victim and that she was sorry that he was no longer there, the court said, "[l]et me start by saying that that was probably the most insincere statement I have ever heard from a defendant at the time of sentencing. And I utterly and unequivocally reject your statement that you never intended to harm [the victim] in any[ ]way. That is absolute nonsense." This statement is significant given that this Court, in our review, does not have the benefit of hearing defendant testify firsthand. County Court continued on to discuss the evidence that was set forth regarding the stab wound, concluding that the evidence demonstrated that it "was more than a poke. [It] was a vicious, cruel, barbaric stab."[FN8] Again, this Court does not have the benefit of the entirety of the evidence set forth at trial, but these comments of the judge, combined with what limited information regarding the victim's wound is contained in the record on appeal, call into question defendant's insight into her role in the victim's death, and ultimately her remorse, as it does not appear that she has fully accepted responsibility for her actions.
In conclusion, it is our opinion that "the nature and circumstances of the crime and the history, character and condition of [this] defendant" do not render her original sentence "unduly harsh" (Penal Law § 60.12 [1]; see generally People v Fisher, ___ AD3d ___, ___, 2023 NY Slip Op 05764, *2-3 [3d Dept 2023]).[FN9] Accordingly, we would affirm the denial by County Court (O'Sullivan, J.) of defendant's application for resentencing pursuant to CPL 440.47.
Lynch, J.P., concurs.
ORDERED that the order is modified, on the law, by reducing the sentence imposed on the conviction of manslaughter in the first degree to a prison term of eight years to be followed by five years of postrelease supervision, the sentence imposed for assault in the first degree to a prison term of eight years to be followed by five years [*11]of postrelease supervision, and the sentence imposed for criminal possession of a weapon in the third degree to a prison term of two years, which sentences shall run concurrently; matter remitted to the County Court of Madison County for further proceedings pursuant to CPL 470.45; and, as so modified, affirmed.

Footnotes

Footnote 1: As to the People's suggestion that defendant's physical injuries are attributable to her substance abuse issues rather than any abuse on the part of the victim, we find that assertion is predicated on nothing more than speculation.

Footnote 2: We are mindful that our prior review of defendant's sentence on direct appeal concluded that it was not harsh and excessive in that it did not present extraordinary circumstances or constitute an abuse of discretion; however, we must also note that our review of sentences pursuant to our interest of justice jurisdiction has evolved since that time (see People v Baldwin, 39 NY3d 1097, 1098 [2023] [Wilson, J., concurring]). To this end, it is our view that the language utilized in the statutory scheme resulting from the DVSJA entails that a reviewing court — whether that be the court that imposed the original sentence or an appellate court — engage in a review of the sentence imposed without deference to the sentence or resentence under review (see CPL 440.47 [3]; Penal Law § 60.12 [1]; compare CPL 470.15 [6] [b]). Accordingly, we find that our prior determination does not foreclose defendant's eligibility for relief pursuant to the since-enacted DVSJA and its goal of offering compassionate consideration to domestic violence survivors who can establish entitlement to such relief by a preponderance of the evidence (see generally NY Senate Debate on Senate Bill S1077, Mar. 12, 2019 [Senate tr] at 1569-1571).

Footnote 3: As pointed out by the dissent, County Court (McDermott, J.) found defendant's statement at her 2010 sentencing hearing, which occurred over 13 years ago and focused on her lack of intent to harm the victim and her history of abuse, as insincere. However, that statement focuses more on defendant's intent, which was squarely at issue during trial and is already factored into her conviction, rather than her remorse. Moreover, although the court noted that it believed defendant could potentially qualify as a battered person, it made further statements suggesting that defendant's proper recourse was to move out or to eject the victim from the home. In our view, these statements demonstrate a fundamental misunderstanding of the struggles of domestic violence victims and their ability to realistically divorce themselves from their abusers. All told, in our view the record fairly reflects that the various individuals who spoke to defendant in connection with this case came away with the belief that she presented as remorseful for her actions.
Footnote 4: Defendant's time spent incarcerated in excess of the reduced sentences resulting from our decision should be credited toward her term of postrelease supervision (see Penal Law § 70.45 [5] [d]). On this point, we are mindful of the concerns of our dissenting colleagues concerning the lack of postrelease supervision that would result from our determination. However, that result is entirely based upon defendant having been incarcerated for more than 15 years at this point, nearly seven years more than the maximum allowable determinate resentence for her class B felony convictions under the DVSJA (see Penal Law § 60.12 [8] [a], [c]). Owing to her second felony offender status, the minimum sentence allowed without application of the DVSJA already exceeds the maximum allowable resentence provided by the DVSJA (see Penal Law §§ 60.12 [8] [a], [c]; 70.06 [3] [b]), thus ensuring that her period of postrelease supervision would be diminished by any sentencing relief she received under the DVSJA. Accordingly, it is our view that giving consideration to the lack of postrelease supervision predicated on the length of time she has already been incarcerated would be unjust under these circumstances and ignores defendant's unremarkable prison record.

Footnote 5: Neither Lesswing's report nor his testimony were admitted at the retrial.

Footnote 6: Given this history, as well as defendant's well-documented history of alcohol and drug abuse and related crimes, it is concerning that granting defendant's application would have the effect of her immediate release from incarceration without any supervision, including postrelease supervision (see Penal Law § 70.45 [5] [d]).

Footnote 7: There are references in the record that this was the same version of events defendant testified to at grand jury, but that portion of the grand jury trial transcript is not contained in the record on appeal.

Footnote 8: The record reflects that the medical examiner who performed the autopsy of the victim stated that the "minimum depth of [the] wound was 3.4 inches with the maximum depth unable to be accurately ascertained." The maximum depth could not be determined because the victim's lung was removed in an attempt to save his life. Additionally, at trial, one of the doctors who treated the victim the night of the incident testified that the depth of the injury was inconsistent with someone poking the victim with a knife and then letting go.
Footnote 9: We agree with the majority that this Court's determination on direct appeal that the sentence was not harsh and excessive does not preclude us from now finding, pursuant to the DVSJA, that it is. While it is abundantly clear from the legislative history of this statute that the sentencing, or resentencing, court is afforded discretion when reaching its determination (see generally NY Senate Debate on Senate Bill S1077, Mar. 12, 2019 [Senate tr] at 1569-1571), given our broad interest of justice jurisdiction when reviewing sentences (see Penal Law § 470.15 [6] [b]), this Court need not find that the sentencing or resentencing court abused its discretion to warrant the reduction of a sentence based upon the exercise of our discretion in the interest of justice (see generally People v Cruickshank, 105 AD2d 325, 335 [3d Dept 1985], affd 67 NY2d 625 [1986]).